### CREAMETTE CO. v. CONLIN.

### CREAMETTE CO. v. GREENE et al.
### Civ. Nos. 134, 1690.

United States District Court
S. D. Florida, Jacksonville and Ocala
Divisions.

Aug. 16, 1950.

Guy Botts, Jacksonville, Fla., Guy Botts, Jacksonville, Fla., F. A. Whiteley, Minneapolis, Minn., for plaintiff.

Green & Bryant, Ocala, Fla., Holsberry, Holsberry & Emmanuel, Pensacola, Fla., John Marshal Green, Ocala, Fla., for defendants.

DE VANE, District Judge.

These suits involve the right of the defendants to adopt and use as a trade-mark the name Creamette in connection with the manufacture and sale of a frozen dessert which name had been adopted by plaintiff many years before and used by it upon macaroni products and other food products manufactured and sold by it.

The suit is brought under numerous Federal Registrations set up in the complaint charging infringement of said registrations and also charging unfair competition and infringement of the common-law rights of plaintiff in its trade-mark Creamette and the plural Creamettes.

These cases were consolidated for trial. None of the material facts are in dispute—the dispute between the parties being the law applicable to the undisputed facts. The pleadings and the proof show that the plaintiff is a corporation organized and existing under the laws of the State of Minnesota, that the defendants are all residents of the State of Florida, and that more than the jurisdictional amount is involved in each case.

Plaintiff's predecessor, Mother's Macaroni Company, was engaged in the manufacture of macaroni and companion paste products prior to August 15, 1912. On said date Mother's Macaroni Company registered with the Patent Office the trade-mark Creamette for its macaroni and similar paste products and on later dates registered its trade-mark Creamette and the plural Creamettes for other food products such as potato chips, seedless raisins, certain breakfast foods, evaporated milk, tapioca, and others.

The evidence shows the trade-mark Creamette and its plural Creamettes has been extensively used by plaintiff in prac-

tically all sections of the United States and in foreign countries and that a large business has been carried on by plaintiff over the years. Plaintiff's principal business has been the manufacture of macaroni, spaghetti and similar paste products and more than ninety-nine percent of plaintiff's revenue is derived from the sale of such products. These products are sold in interstate commerce largely in states lying in the northern half of the United States from the Atlantic to the Pacific Oceans.

The evidence further shows that plaintiff introduced its macaroni and similar paste products in Florida late in 1946 and since that date has sold such products at numerous outlets in the State.

The evidence further shows that plaintiff has expended a substantial sum of money over the years in advertising the products sold by it, principally its macaroni products and the volume of business done by plaintiff since 1922 indicates that it has built up a good reputation under its trade-mark Creamette for its macaroni products.

T. A. Conlin, his wife and two sons, are the principal defendants in these cases. Conlin, with his wife and two sons, operate a copartnership under the name of Conlin Creamette Products. This copartnership has a written agreement dated March 10, 1948, with Taylor Freezer Corporation, of Beloit, Wisconsin, for the use of a patented machine, manufactured by the Taylor Freezer Corporation, for the making of frozen desserts. This contract gives to the Conlin partnership an exclusive franchise for the use of these machines in the State of Florida. The other defendants named in the cases are all licensees of the Conlin partnership owning and operating Taylor Freezer Corporation machines for the manufacture of the frozen desserts sold by them.

The Taylor Freezer Corporation also has a registered trade-mark for the product manufactured in its machines, which is used in states other than Florida. The Taylor Freezer Company prescribes the formula and prepares and furnishes to its licensee the mix used in these machines for the manufacture of the frozen desserts in the machines. However, Florida has a law requiring that the mix used in the manufacture of ice cream, manufactured and sold in the State, be manufactured in the state and this law prohibited the Conlin partnership from using in Florida the mix and the trade-mark of Taylor Freezer Corporation. It, therefore, became necessary for them to adopt a trade-name of their own and use a mix for the manufacture of their ice cream that is made in the state. After checking with the officials of the State of Florida and finding that they could do so, the Conlin copartnership adopted the trade-name Creamette and registered it with the Secretary of State under date of October 10, 1947. Its use is limited to frozen desserts. In this connection it should be noted that Conlin secured his trade-mark in Florida prior to entering into the written agreement of March 10, 1948 with the Taylor Freezer Corporation for the exclusive agency of the Taylor Freezer machines for the State of Florida.

On July 22, 1949 plaintiff applied for and secured from the Secretary of State of Florida registrations of its trade-marks Creamette and Creamettes for all products which it had theretofore registered with the United States Patent Office. The evidence shows that plaintiff—in fact plaintiff admits—that it has no registered trade-mark covering ice cream and similar frozen dessert products and that it has never sold any of these products.

The outcome of the cases resolves around the question as to whether upon this record it has been shown that defendants are guilty of unfair competition and infringement of the common-law right of plaintiff in its trade-mark Creamette. The complaint alleges that with full knowledge of plaintiff's notorious and exclusive use of the trade-mark Creamette and with full knowledge of the high grade food products sold by plaintiff under said trade-mark and with the fraudulent intent of trading upon the reputation and good will of plaintiff in its said trade-mark and with the fraudulent intent of passing off defendant's products as and for the goods of plaintiff and with the full knowledge of plaintiff's rights under the registration of said trade-mark and of its right under the common law, the

defendants had used and are using plaintiff's trade-mark, Creamette, which is likely to cause confusion in trade, particularly as to the source of the products sold by the defendants, and to cause confusion or mistake and deceive purchasers. Plaintiff seeks an injunction permanently enjoining the defendants and each of them from using the trade-mark Creamette in the sale of their product. Plaintiff also seeks an accounting under the direction of the court, requiring defendants to pay over to plaintiff all profits that have been received from all sources in the business obtained and done by reason of defendants' unlawful and fraudulent use of plaintiff's trade-mark, Creamette, and attorney's fees for the prosecution of these suits.

The allegations in the complaint are sufficient to entitle plaintiff to the relief prayed for if supported by the evidence in the cases. The evidence submitted by plaintiff relate exclusively to the long use of the trade-mark, Creamette, by plaintiff, to the amount of business it has done over the years and to the extent it has advertised and sold its products under that trade-mark. The evidence shows that plaintiff sells all its products to retail outlets from whom the consumers purchase plaintiff's products. Display advertising is placed in these retail outlets and other means of advertising are used by plaintiff to increase the sale of its products. All, or substantially all, of this advertising relates to its macaroni and other paste products.

Plaintiff's contention is that due to the extensive business done by it and the amount of advertising carried on by it, and the good name in which its products are held by the trade, that defendants must have been fully aware of all these facts and the sole purpose in adopting the trade-mark, Creamette, was to enjoy and profit on the good name and reputation of plaintiff's products.

Defendant T. A. Conlin testified that he, nor any of his copartners, had ever heard of plaintiff prior to the registration of their trade-mark with the Secretary of State of Florida, and had never heard of or seen any products of plaintiff bearing its trade-mark. Conlin testified that in searching for an appropriate trade-mark for the product he expected to manufacture in Florida, he recalled that on an occasion some years before he had seen the word Creamette used by an ice cream dispensary in Illinois and that this appeared to be the most descriptive and appropiate trade-mark that members of the copartnership could find for their product and that it was adopted and registered by them, without any knowledge of the existence of plaintiff or the sale of its products under its trade-mark.

The evidence further shows that defendants make no sale of their products to the outlets through which plaintiff's products are sold. Defendants' ice cream is sold in a building designed, built and used exclusively for the manufacture and retail sale of the ice cream produced by the Taylor Freezer Corporation machine. There is no evidence whatever in the record of any customer confusion as between the products sold by plaintiff and that manufactured and sold by defendants.

While admitting that the Lanham Trademark Act, 15 U.S.C.A. § 1114, does not give it a monopoly in the use of its registered trade-marks on all food products, plaintiff nevertheless contends that its exclusive use of said trade-marks over the years gives it the right to prevent their use by anyone else upon any food product. It asserts that the use of its trade-marks by any one upon any type of food products constitutes unfair and unlawful competition which plaintiff is entitled to enjoin.

Plaintiff relies heavily in these cases on its past successes in preventing others from using its trade-mark on other food products. It cites two cases heretofore litigated in Federal Courts. The first of these was brought in the District Court of the United States, Northern Division of Illinois, Eastern District, at Chicago, entitled Creamette Company v. Overland Candy Company et al., 93 F.Supp. 90. In this latter case the defendants use the trade-mark Creamettes on sugar wafers sold to the retail trade in packages. The defenses in that case were very similar to those in this case, i.e., plaintiff had never used the trade-mark Creamettes on sugar wafers; that sugar wafers were so diverse from any

of the goods on which plaintiff had used its trade-mark Creamettes as not to be liable to cause confusion; and that the trade-mark Creamettes was either descriptive or misdescriptive, since no cream was used in the products upon which the trade-mark had been employed except possibly evaporated milk. The District Court held that the use of plaintiff's established trade-mark upon sugar wafers manufactured and sold by defendants infringed the trade-mark of plaintiff as used on macaroni and other food products and its use by defendants was enjoined. There was no appeal in this case.

The second case relied upon by plaintiff is Creamette Company v. Minnesota Macaroni Company, D.C., 74 F.Supp. 224. In that case the defendant used the trade-mark Quickettes for a form of macaroni products, which though not identical with plaintiff's trade-mark, plaintiff alleged was so close to it as to be liable to cause confusion. The Court sustained the contention of plaintiff in this case and enjoined the further use of the trade-mark Quickettes. There was no appeal in this case.

The third group of cases relied upon by plaintiff were never brought to litigation, but according to the testimony of plaintiff's witnesses, were successfully terminated by persuasion or threats of litigation and the use of plaintiff's trade-mark discontinued. In this class of cases, so witnesses of plaintiff testified, falls the ice cream parlor in Illinois, which defendant Conlin saw in operation prior to the registration in Florida of the trade-name Creamette by him. Plaintiff asserted and defendant did not deny that this Illinois ice cream parlor had discontinued the use of the trade-name Creamette in connection with the product manufactured and sold by it.

In addition, plaintiff cites and relies upon many cases which upon the particular facts of those cases resulted in their termination in the way plaintiff earnestly contends that this case should terminate. Defendants do likewise. A review of these many cases shows that each case was decided in favor of plaintiff or in favor of defendant upon the particular facts of each case. The cases pro and con cited by the parties are too numerous to attempt a review of them here. They are all familiar to any court that is called upon to hear a case of this character. Probably the leading case supporting plaintiff's contention is Yale Electric Corporation v. Robertson, Commissioner of Patents, 2 Cir., 26 F.2d 972, and the leading case supporting defendants' contention is California Fruit Growers Exchange v. Sunkist Baking Company, 7 Cir., 166 F.2d 971.

The question this court has before it is whether the facts in these cases require the court to find and hold that they are controlled by the decisions relied upon by plaintiff or by the decisions relied upon by the defendants.

The court has carefully considered the evidence in these cases and finds and holds that plaintiff has failed to carry the burden of proof of the allegations of its complaint which the law imposes upon it. There is no direct testimony that any of the defendants ever heard of plaintiff or the products sold under its two trade-marks prior to the registration by the Conlin defendants of their trade-mark Creamette with the Secretary of State of Florida. The evidence shows that all the defendants do strictly an intrastate business; that the product manufactured and sold by them is not sold at any place where any of plaintiff's food products are sold; that the frozen dessert manufactured and sold by defendants is of a uniform quality, sold on the premises where it is manufactured, to the retail trade, for immediate consumption; that the trade-mark adopted by the Conlin defendants is descriptive of the product manufactured and sold by the defendants and plaintiff's evidence fails to show a single instance of unfair competition or of profit to the defendants by reason of the good will plaintiff claims to have earned for the products sold by it under its trade-mark.

As pointed out above, counsel for plaintiff conceded at the close of the cases that it did not have a monopoly in the use of its trade-mark Creamette under any Federal Law, but that it relied for its claim of a monopoly in the use of said trade-mark upon its allegation of unfair competition and infringement of the common-law right of the plaintiff in said trade-mark.

The evidence submitted by plaintiff being insufficient to support this claim the judgments of the court must be for the defendants and judgments will be entered in favor of the defendants in conformity with the court's holding in this memorandum decision.