Good Housekeeping Shops, Inc., Appellant, v. Hyman Kaye and Harry Cohen, Trading as Good Housekeeping Table Pad Company, Appellees.

Gen. No. 43,645.

Opinion filed February 5, 1947.   Released for publication February 21, 1947.

ARKIN & BERMAN, of Chicago, for appellant; MATTHEW BERMAN, of Chicago, of counsel.

ARCHIE H. COHEN, of Chicago, for appellees; HARRY J. LURIE, of Chicago, of counsel.

MR. JUSTICE BURKE delivered the opinion of the court.

On September 29, 1944 Good Housekeeping Shops, Inc., an Illinois corporation, filed a complaint for injunction and accounting in the superior court of Cook county against Hyman Kaye and Harry Cohen, doing business as Good Housekeeping Table Pad Company. The complaint alleges that plaintiff was granted a certificate of incorporation by the State of Illinois on August 28, 1937; that on November 16, 1938 the articles of incorporation were amended to provide that plaintiff could manufacture, buy, sell and deal in goods, wares and merchandise of every kind, nature and description; that since its incorporation it has engaged in the sale and distribution of furniture, electrical appliances and sundry and kindred items in connection with household furnishings in Chicago and throughout Illinois; that its principal place of business is at 1245 South State street; that its branch stores are

located at 1551 West Chicago avenue, 1232 South Halsted street, 222 South Wabash avenue, 6125 South Halsted street and 3120 Lincoln avenue, all in Chicago; that since its incorporation it has expended $512,407.14 for advertising its trade and corporate name of "Good Housekeeping Shops, Inc." through the media of newspapers and radio having a circulation throughout the State; that by reason of the extensive advertising and fair dealing with its customers, distributors, manufacturers and the public, it has received city and statewide recognition for fair dealing and responsibility, and has done a gross business during the past five years of over $1,000,000 a year; that as a result of its extensive advertising and fair dealing with the public, the name "Good Housekeeping" is the distinguishing part and feature of its corporate name; that notwithstanding the long use and enjoyment by it of its corporate name and of the fact that "Good Housekeeping" is part and parcel of its name, defendants, wilfully disregarding its rights, commenced doing business in Chicago on or about April 1, 1944 under the name and style of "Good Housekeeping Table Pad Co.," with an office at 333 North Michigan avenue, Chicago, for the purpose of selling table pads; that plaintiff sells and offers for sale table tops and table pads; that defendants, desiring to avail themselves of the good will and reputation that plaintiff built up for itself, appropriated the name of "Good Housekeeping" in order to capitalize on the sale or distribution of table pads regularly sold by plaintiff; that the act of defendants in adopting the "imitation of plaintiff's name," is calculated to deceive the purchasers and actually has and does mislead many of them to buy the table pads sold by defendants in the belief that they are doing business with plaintiff; that defendants imitated the name of plaintiff in furtherance of their scheme to appropriate to themselves some of the business in table pads that was regularly enjoyed by

plaintiff; that the act of defendants in appropriating the name of "Good Housekeeping Table Pad Co." and advertising their business under such name is calculated to and will deceive the public into believing that the product advertised and sold by defendants was in fact the product of plaintiff, or that plaintiff was in some way connected with or the sponsor of defendants; that the use of the name "Good Housekeeping" can serve no lawful purpose to defendants except the purpose of unlawfully acquiring profit at the expense of plaintiff; and that the acts of defendants will damage the reputation, good will and volume of sales of plaintiff. Plaintiff prayed that defendants, their agents and servants be enjoined from using the name "Good Housekeeping" or "Good Housekeeping Table Pad Co." in connection with the manufacture, sale, advertising or distribution of table pads, for damages caused by their wrongful acts; and that they account for and pay to plaintiff all the profit realized from the sale of table pads sold by them under the name of "Good Housekeeping Table Pad Co."

Following an answer by defendants, the cause was referred to a master in chancery, who, after hearing the testimony of witnesses, found for plaintiff and recommended that a decree be entered enjoining defendants from using the names of "Good Housekeeping Table Pad Co.," or "Good Housekeeping Venetian Blind Co., Not Inc.," or any other name in which the words "Good Housekeeping" are included, in Chicago, and denying plaintiff any damages. Objections filed by defendants were overruled. These objections were permitted to stand as exceptions before the chancellor. He sustained the exceptions to the report and entered a decree dismissing the complaint for want of equity at plaintiff's costs. Plaintiff appealed.

A certificate of incorporation was issued to plaintiff under the name of "Good Housekeeping Shops, Inc." by the State of Illinois on August 28, 1937. It

is engaged in the sale and distribution of furniture and household furnishings in Chicago. It operates five branch stores, general offices and a warehouse in Chicago. For the six year period from 1939 to 1944 it served 125,000 to 150,000 customers and its sales exceeded $6,000,000. During that period it expended $600,000 for advertising in newspapers, by direct mail and over the radio, its name "Good Housekeeping Shops." It deals in about 1,000 different products and articles. It has approximately 110 employees. It maintains extensive establishments for its stores and general offices and has long term leases at annual rentals exceeding $50,000. The table pads dealt in by plaintiff are manufactured under the distinctive mark or label, "HEAT-PROOF Asbestos Table Cover." Plaintiff never sold or dealt in venetian blinds.

Hyman Kaye, one of the defendants, resides in Chicago, and Harry Cohen, the other defendant, resides in Detroit. Mr. Cohen had been operating a business in Detroit under the name of "Good Housekeeping Table Pad Co." since January 15, 1941. About April 1, 1944, defendants, as partners, started business in Chicago under the name of "Good Housekeeping Table Pad Co." and were located in a secretarial service on the fifth floor at 333 North Michigan avenue. They had no office of their own. They availed themselves of a telephone call service, for which they paid ten cents a call. This office was less than a mile and a half from the main offices of plaintiff. In November 1944, after the filing of the instant complaint, they moved to a store on the main floor of the same building at a rental of $90 monthly. On April 24, 1944 defendants registered the name "Good Housekeeping Table Pad Co." with the county clerk. Defendants also registered the name "Good Housekeeping Venetian Blind Co." with the county clerk in October 1944. Defendants knew of the prior use by plaintiff of the name "Good Housekeeping Shops."

On May 24, 1944 plaintiff's attorney sent a letter to defendants, stating: "Your advertisement in the Chicago papers yesterday and today under the name of Good Housekeeping constitutes unfair competition, and our clients have asked that we immediately commence suit against you to restrain your use of the name for damages and an accounting of all profits made by you," and stating further that unless they ceased using such name, action would be instituted.

Defendants advertised in the same newspapers used by plaintiff and spent $2,843.50 for advertising in the period between May 24, 1944 and January 20, 1945. On the windows and door of defendants' place of business were painted "Custom Made Table Pad Company" in six and eight inch letters, and "Good Housekeeping Table Pad Company" and "Good Housekeeping Venetian . Blind Company" in three inch letters, each followed by the words "Not Inc." In defendants' advertisements, prospective customers were requested to telephone or write. When inquiries were made, representatives of defendants called on the prospective customers. Measurements were then taken. Ninety per cent of defendants' business was done in that way. There was evidence that some, if not all, of the table pads sold by defendants bear the seal of guarantee by the Good Housekeeping Institute, sponsored by Good Housekeeping Magazine.

No articles, other than table pads and venetian blinds, were handled or sold by defendants. Plaintiff did not advertise table pads for sale, did not conduct a mail order business and did not show the telephone numbers of any of its stores in its large full page advertisements. It operated one store at 222 South Wabash avenue under the name of "Central Furniture Outlet," sometimes designated as "Central Outlet." Plaintiff's method of conducting business was principally by direct store sales and customers came to the stores. Ordinarily, it sells table pads in con-

nection with the sale of dining room sets. Plaintiff is primarily engaged in the furniture business. Defendants never simulated any of the advertisements of plaintiff.

Plaintiff asserts that while the words ''Good Housekeeping'' are descriptive and cannot ordinarily be adopted as an exclusive trade name, that its expenditure of more than $600,000 in advertising and publicizing the words ''Good Housekeeping'' in connection with its trade name from 1939 to 1944 in Chicago, and the sale of its products to more than 125,000 customers, with sales exceeding $6,000,000, have identified the words ''Good Housekeeping'' with its business, give it a proprietary right to the words ''Good Housekeeping'' in connection with its business, and that the name has acquired a secondary meaning. The parties are in agreement that the words ''Good Housekeeping'' are descriptive. Defendants maintain that these words cannot be appropriated exclusively by plaintiff under the factual situation presented by the case at bar. Both parties place great reliance on *DeLong Hook & Eye Co. v. Hump Hairpin Mfg. Co.*, 297 Ill. 359, the leading case on the subject in this State. There our Supreme Court said (365):

''Where a manufacturer or merchant has used a mark, word or phrase in such a way that it has become identified with his business and the articles of his manufacture, another will not be permitted to use the same mark, word or phrase so as to lead purchasers to believe they are buying the goods of the former. This rule applies even though the word, name or phrase under which the reputation of the merchant or manufacturer has been acquired is geographical or merely descriptive of the character or quality of the articles or the place of their manufacture or sale and is therefore incapable of being monopolized for use as a trademark. The question is one of common honesty, and the courts require the observance of such a standard as

will protect the business, the market and the reputation of a dealer against all acts which tend to deceive the public into believing that the goods of another are his goods and to pass them off as such. A merely descriptive term or the name of a person or place may have become associated with a particular kind of goods or the product of a particular manufacturer in such a way that merely attaching the word to an article of the same kind would amount to a misrepresentation as to the origin of the article. In such case, while the use of the word cannot be prohibited it may be enjoined unless accompanied by such information and precautions as will unmistakably distinguish the article from the goods of the original manufacturer or vendor and will prevent deception of purchasers. . . . Since the appellee has no trade-mark in the word 'hump' it has no exclusive right to the use of the word. Since the word in its primary sense is descriptive of the appellant's manufacture, the appellant has a right to use the word to describe its goods and can be restrained from doing so only in case it appears that the word has come to have a secondary or trade meaning,—that is, that all notions bearing the name 'hump' are of the appellee's manufacture. Even in such case the use of a descriptive or geographical word, in its primary sense, cannot be wholly enjoined. Whether the appellee has a trade-mark in the name or not, whether the word is capable of adoption as a trademark or not, if, in fact, that name means in the trade the appellee or the appellee's goods, the appellee has a right to have the appellant enjoined from using the name in selling its goods so as to mislead buyers into believing that the appellant's goods are of the appellee's manufacture. The only question of proof is the trade meaning of the name.''

Plaintiff cites the case of *Lady Esther, Ltd. v. Lady Esther Corset Shoppe, Inc.,* 317 Ill. App. 451, in support of its contention that injunctive relief will

be granted, although there is no competition, in fact, between the parties, nor any element of fraud practiced by the defendants. In our opinion the factual situation presented by the *Lady Esther* case is not analogous to the factual situation in the case at bar. The words "Good Housekeeping" do not, of themselves, indicate the kind, grade or character of the merchandise handled by plaintiff. No evidence was introduced that anyone was or might be deceived because of the use by the defendants of the names "Good Housekeeping Table Pad Co." or "Good Housekeeping Venetian Blind Co., Not Inc." There was no evidence that customers or prospective customers of plaintiff or the general public were confused or deceived by the trade names used by defendants. It is not contended that defendants made representations to customers, prospective customers of plaintiff or to the general public that they were in any way connected with plaintiff. We have examined the exhibits containing the advertisements of the respective parties and conclude that there is no likelihood that prospective customers of plaintiff or the general public would believe that defendants, in the use of the trade names they adopted, were in any way connected with plaintiff.

It is interesting to observe that in the six year period during which plaintiff served more than 125,000 customers, it had sold only a total of 29 table pads. These were invoiced to it by Asbestos Asphalt & Insulation Mfg. Co., at a price of $193.58. Plaintiff states that the reason that its sales of table pads have not been voluminous has been largely due to the fact that table pads are ordinarily sold by it in connection with the sale of dining room sets, which, as a result of the war conditions, became very scarce, and asserts that the time element involved did not "create a situation where numerous instances of actual confusion" could have been called to its attention. The

last hearing before the master was held on February 7, 1945. The master's supplemental report is dated May 1, 1945 and the decree was entered September 18, 1945. If plaintiff had any additional testimony which would tend to show deception or confusion because of the use of the words "Good Housekeeping" in defendants' trade names, it could have obtained leave to file a supplemental complaint and to introduce such testimony for consideration by the court.

We find that the trade names used by defendants are not calculated to deceive plaintiff's customers, prospective customers or the general public into believing that they are trading with plaintiff. We are of the opinion that under the facts of this case the chancellor was right in dismissing the complaint for want of equity. Therefore, the decree of the superior court of Cook county is affirmed.

*Decree affirmed.*

LEWE, P. J., and KILEY, J., concur.