CALIFORNIA FRUIT GROWERS EX-
CHANGE v. SUNKIST BAKING CO.

No. 9326.

Circuit Court of Appeals, Seventh Circuit.

Dec. 23, 1947.

Rehearing Denied April 26, 1948.

Francis J. Coyle, W. Richard Stengel, and Bernard J. Moran, all of Rock Island, Ill., and Casper W. Ooms, of Chicago, Ill., for appellants.

Leonard S. Lyon and Irwin L. Fuller, both of Los Angeles, Cal., and Eugene R. Johnson, of Peoria, Ill., Frederick S. Lyon, of Los Angeles, Cal., and Miller, Westervelt, Johnson & Thomason, of Peoria, Ill., (George E. Farrand, of Los Angeles, Cal., and Marshall P. Madison, of San Francisco, Cal., of counsel), for appellees.

Before MAJOR, KERNER, and MINTON, Circuit Judges.

MINTON, Circuit Judge.

The plaintiff California Fruit Growers Exchange, hereafter referred to as Exchange, and the plaintiff California Packing Corporation, hereafter referred to as Corporation, obtained a judgment against the defendants in the District Court for the Southern District of Illinois, Northern Division, for unfair competition and infringement of the trade-marks "Sunkist" and "Sun-Kist," registered and owned by the plaintiffs, and an injunction against the use by the defendants of the name "Sunkist" or any colorable imitation thereof in the manufacture, advertising, offering for sale, distribution, or sale of bakery products of any nature whatsoever, including bread, raisin bread, and buns, and against competing unfairly with the plaintiffs, and other injunctive relief. From this judgment the defendants have appealed.

The court made findings of fact and stated its conclusions of law thereon in favor of the plaintiffs. From these findings of fact, it appears that the plaintiff Exchange is a non-profit co-operative marketing association incorporated under the laws of California and is engaged primarily in marketing and selling citrus fruits throughout the United States and in foreign countries. The plaintiff Corporation is a New York corporation engaged in the selection, preparing, packing, and marketing

of canned and dried fruits and vegetables, including raisins, throughout the United States and in foreign countries.

Exchange has employed the trade-mark "Sunkist" in the sale of over two billion dollars worth of goods and has expended over forty million dollars in advertising the trade-mark. Certificates of registration for the trade-mark "Sunkist" have been issued to Exchange by the United States Patent Office for oranges, lemons, citrus fruits, oils and acids, pectin, citrus-flavored non-alcoholic maltless beverages as soft drinks, and concentrates for making soft drinks. Corporation has employed the trade-mark "Sun-Kist" since 1907 and has sold approximately fifty million dollars worth of goods bearing such trade-mark and has expended in excess of $350,000 in advertising it. Certificates of registration for the trade-mark "Sun-Kist" have been issued by the Patent Office to Corporation for canned and dried fruits and vegetables, milk, butter, walnuts, catsup, pickles, olive oil, jams, jellies, olives, coffee, tea, beans, pineapple juice, grape juice, tomato juice, raisins, grapes, and various other products. The joint and concurrent use of the trade-marks "Sunkist" and "Sun-Kist" by both plaintiffs has eventuated under and by virtue of an agreement between them whereby each has granted the other the right to employ the mark on the goods aforesaid.

The defendant Sunkist Baking Company is a co-partnership composed of Harry S. Coin and Nick S. Coin, who are citizens and residents of the State of Illinois and are engaged in baking and selling bread and buns, including white bread, whole-wheat bread, "Weet-Hart" bread and raisin bread, in interstate commerce, under the firm name and style of "Sunkist Baking Co.," in and about Rock Island and adjacent cities. Each loaf of bread sold by the defendants is enclosed in a wrapper bearing the name "Sunkist Baking Co." and also the words "Sunkist Bread." The name "Sunkist" appears on the defendants' place of business, their trucks, and their outdoor advertising, without any designation of the co-partnership name. The court also found that the defendants had improperly and unlawfully obtained registration from the State of Illinois for the trade-mark "Sunkist Bread," and from the State of Iowa for the trade-mark "Sunkist."

The court found that the plaintiffs' and the defendants' goods are sold in the same channels and may be consumed together, and that the defendants have endeavored to appropriate and capitalize upon the plaintiffs' trade-marks. The controlling findings 12, 13, 14, and 15 we set out in full as follows:

"12. The use of the word 'Sunkist' by the defendants is likely to cause confusion or mistake in the minds of the public and to deceive purchasers. Bread belongs to the same general class of merchandise as the fruit and canned fruits and vegetables marketed by plaintiffs. Defendants' bread bearing the word 'Sunkist' as used by defendants would naturally or reasonably be supposed to come from plaintiffs.

"13. The trade-marks 'Sunkist' and 'Sun-Kist' are purely fanciful in character, and to the public in general have acquired a secondary significance of being related to and associated with plaintiffs' products only.

"14. The goods sold by plaintiffs under the trade-marks 'Sunkist' and 'Sun-Kist,' and the bread and buns marketed by defendants bearing the name 'Sunkist' and the name 'Sunkist Baking Company' are goods of substantially the same descriptive properties.

"15. By using the plaintiffs' trade-mark 'Sunkist' in defendants' trade-name, the defendants have competed unfairly with plaintiffs and have been guilty of unfair trade practice."

On these findings the court concluded that the trade-marks "Sunkist" and "Sun-Kist" were valid trade-marks owned by the plaintiffs and were infringed by the defendants' use of the name "Sunkist" and the trade-name "Sunkist Baking Co.," and that the defendants competed unfairly with the plaintiffs and were guilty of unfair trade practices. The court also concluded that the defendants have not distinguished this action from the ruling of the Circuit Court of Appeals for this Circuit in California Fruit Growers Exchange et al. v. Windsor

Beverages, Ltd., et al., 7 Cir., 118 F.2d 149. Upon such conclusions of law, the court entered judgment for injunctive relief, and the plaintiffs waived any accounting for profits and damages.

The first question that we have to consider is whether the trade-marks "Sunkist" and "Sun-Kist," owned and used by the plaintiffs in the marketing and sale of fruits, vegetables, and their other products, are infringed by the defendants' use of their trade-name "Sunkist Baking Co.," and by the use of the word "Sunkist" on their bakery products. The parties concede that the Lanham Act[1] applies. The validity of the trade-marks is not questioned. To constitute infringement under the Lanham Act, a registered trade-mark must be used in such a manner as " * * * is likely to cause confusion or mistake or to deceive purchasers as to the source of origin of such goods * * *." Section 32(1) (a).[2]

The plaintiffs state in their brief:

"It is a confusion of origin or sponsorship and not confusion of goods which controls * * *."

If that is the controlling factor, and we think that it is, let us see if the court found it.

The court found that the use of the name "Sunkist" upon bread or buns is likely to cause confusion or mistake in the minds of the public and to deceive purchasers. The court did not find that there is any likelihood of confusion as to the origin of the bakery products. This confusion as to source is the very element the Lanham Act states is necessary to constitute infringement of a trade-mark and which the plaintiffs have stated is the essential fact in infringement. The court has wholly failed to find that there is likelihood of confusion as to the origin of the bakery products with the products marketed under the plaintiffs' trade-marks, except to find that bread belongs to the same general class of merchandise as fruit and vegetables, and that bread and fruit and vegetables are goods of *substantially the same descriptive properties*. These findings seem to have been drawn to cover infringement under

the Act of February 20, 1905. 15 U.S.C.A. § 96. Such section provides:

"Any person who shall, without the consent of the owner thereof, reproduce * * * any such trade-mark and affix the same to merchandise of *substantially the same descriptive properties* as those set forth in the registration, or to labels * * * intended to be used upon or in connection with the sale of merchandise of *substantially the same descriptive properties* * * * shall be liable (for infringement)." (Italics ours.)

In Findings 12 and 14 of the District Court, the words "the same general class of merchandise" and "goods of substantially the same descriptive properties" are facts essential to infringement under the 1905 Act, and not under the Lanham Act. Finding 12 of the District Court is an integrated finding that the use of the word "Sunkist" by the defendants is likely to cause confusion or mistake in the minds of the public because bread belongs to the same general class of merchandise as fruits, canned fruits, and vegetables, and because the defendants' bread bearing the word "Sunkist" would naturally and reasonably be supposed to come from the plaintiffs.

█ Fruits and vegetables are not in the same general class of merchandise as bread, nor are they goods of the same descriptive properties as bread. About the only things they have in common are that they are edible and are usually sold in the same class of stores to the same class of customers. Fruits and vegetables are the product of nature's growth. Bread is a product of manufacture from many ingredients; it includes the skill of the baker and is usually produced locally. On the question of the same descriptive properties, in cases like the present, the appellate court is as capable of reaching a conclusion on this kind of evidence as the District Court. Eastern Wine Corporation v. Winslow-Warren, Ltd., Inc., 2 Cir., 137 F.2d 955, 960.

█ Unless "Sunkist" covers everything edible under the sun, we cannot believe that anyone whose I. Q. is high enough to be regarded by the law would ever be confused

---

[1] 15 U.S.C.A. §§ 1051–1127.

[2] 15 U.S.C.A. § 1114 (1) (a).

or would be likely to be confused in the purchase of a loaf of bread branded as "Sunkist" because someone else sold fruits and vegetables under that name. The purchaser is buying bread, not a name. If the plaintiffs sold bread under the name "Sunkist," that would present a different question; but the plaintiffs do not, and there is no finding that the plaintiffs ever applied the word "Sunkist" to bakery products.

The unconscionable efforts of the plaintiffs to monopolize the food market by the monopoly of the word "Sunkist" on all manner of goods sold in the usual food stores should not be sanctioned by the courts. The trade-marks should be confined substantially to the articles for which they were authorized, otherwise, why limit the marks at all? Before a trade-mark can be granted under the applicable Lanham Act, the application therefor must name the products to which it is to apply. 15 U.S.C.A. § 1051. We are unable to see how one seeking to purchase bread could be likely to be confused as to the source of origin of the bread, although sold under a trade-mark valid for fruits and vegetables. Certainly this must be true where bread has never been sold by the owner of said trade-mark, valid as to fruits and vegetables.

The court found that the plaintiffs' trade-marks "Sunkist" and "Sun-Kist" have acquired a secondary meaning of being related to and associated with the plaintiffs' products only. What are the plaintiffs' products? Fruits and vegetables, not bread, for there is, we repeat, no finding that the plaintiffs ever produced or marketed a loaf of bread.

We do not think there is a finding that there is likelihood of confusion as to the source of origin of the products, as required by the Lanham Act.

The court made the following finding *as a part* of Finding 12:

"Defendants' bread bearing the word 'Sunkist' as used by defendants would naturally or reasonably be supposed to come from plaintiffs."

Let us assume that this finding can be separated from its context in Finding 12, which we do not think it can be, and that it is a finding that there is likelihood of confusion among the public as to the source of origin. Then this finding is not sustained by substantial evidence. The only evidence to support this finding is the testimony of two so-called experts who testified on behalf of the plaintiffs, and the fact that bread is sold in the same class of stores and to the same class of customers as the plaintiffs' fruits and vegetables. Against this finding is the difference in the nature of the products themselves—they are not of the same descriptive properties. As to this difference, its weight and significance is as open to us as to the District Court. Certainly the stores where the products of the parties are sold and the customers to whom they are sold are as well-known to us as to the District Court, and such subsidiary facts are of little or no significance, according to an eminent authority who says:

"However, it has been pointed out, with reason, that modern stores sell all sorts of commodities, and a rule that all goods sold in the same stores are to be considered related goods, would have the practical effect of creating universal trade-marks independent of the nature of the goods on which they are used." Nims, Unfair Competition and Trade-Marks, Fourth ed., 1947, Vol. I, p. 693.

This leaves this doubtful finding based upon the opinion testimony of these two so-called experts, given in answer to hypothetical questions. Mr. Lester, vice president of Corporation, testified:

"A. My opinion, sir, is that any person buying Sunkist Bread of the defendant would confuse those goods with the products of the plaintiffs.

\* \* \* \* \* \*

"A. I base my opinion upon the knowledge of the grocery business and upon a very wide experience. The word Sunkist is our fair name, it's our reputation of quality, it has been before the American public for thirty-eight years. It represents to the consumer that the goods are of the highest quality, packed in sanitary factories of goods of the best ingredients, comply fully with the pure food laws throughout the world. She would have every reason to expect that other foods bearing this mark were prepared from equally high quality in-

gredients, in an equally good workmanship, likewise complied with all food laws throughout the world, and she would take other foods under our brand name, Sunkist, to be goods packed by or distributed by the Sunkist people."

The other witness, Mr. Eller, the advertising manager of Exchange, gave his opinion as follows:

"A. I believe it would be confusing for the reason that Sunkist is a household word, universally accepted and recognized as identifying products of high quality emanating from the California Fruit Growers Exchange or the California Packing Company. I think it is only reasonable that consumers, being so familiar with the trademark on those products, when they saw it appear on another product would assume it came from those organizations or was sponsored in some way by them.

"Q. You say 'when the trade saw the name appear on another product.' Are you referring now to a food product?"

"A. Particularly to a food product."

Thus we have the speculative opinion of the vice president of one plaintiff and the advertising manager of the other as to what the purchaser would likely think. No prospective purchaser gave any such opinion. Indeed, the many housewives called were not in the least confused. We think the evidence of these two so-called experts is so unsubstantial as to afford no support for the so-called finding that by the defendants' use of "Sunkist" on their bakery products, such products would naturally or reasonably be supposed to come from the plaintiffs. In any view of this case, the record is wholly devoid of any finding, or substantial evidence to support a finding, of a likelihood of confusion as to the source of origin, as required to constitute infringement under the Lanham Act.

There is another strange aspect about this confusion which the plaintiffs contend is likely to occur. It will be observed that the plaintiffs have launched into the market two classes of goods under the marks "Sunkist" and "Sun-Kist," which goods are much more nearly of the same class and descriptive properties than the defendants' bread is of the same class and descriptive

properties as any of the products of the two plaintiffs; and this is all done without confusion because the parties have agreed, forsooth, there shall be no confusion. Granted the plaintiffs had a right to contract away the public's likelihood of confusion from their closely related products sold all over the United States and in foreign countries, their cry that there is a likelihood of confusion of the source of a loaf of bread put out by a local bakery at Rock Island, Illinois, with their products because they market fruits and vegetables under the same name, is hardly audible to us. When a customer bought a jar of jelly under the name "Sunkist," he could not be confused as to whether it came from California Fruit Growers Exchange or California Packing Corporation. The plaintiffs had taken care of that by contract. We are supposed to believe that when a customer bought fruits or vegetables under the name "Sunkist," he was not confused as to whether the fruit came from the California Fruit Growers Exchange or the vegetables from the California Packing Corporation; but if he bought a loaf of bread under the name "Sunkist," he was likely to think that he bought it from one or the other of the plaintiffs because they sold fruits and vegetables, but never bread. With the plaintiffs practicing such hocus-pocus with the trade-name "Sunkist," we shall ask to be excused when we are admonished by these dividers of confusion by contract to hear their vice president and advertising manager shout confusion on behalf of the purchasing public.

What these plaintiffs seek to do is to monopolize the word "Sunkist" as applied to all edible foods. That is the opinion of the advertising manager of Exchange, above quoted. We think that there should be more substantial evidence than this record affords before we give our sanction to such extension.

The District Court stated in its conclusions of law that the defendants' case could not be distinguished from California Fruit Growers Exchange et al. v. Windsor Beverages, Ltd. et al., supra. We think that case can readily be distinguished from the defendants' case. In the Windsor case the word "Sunkist" was used upon carbonated

beverage drinks flavored with orange, lemon, and other fruit, while the plaintiffs had registered the trade-mark "Sunkist" for fruit juices and citrus-flavored concentrates for making soft drinks. It would be difficult to imagine products or merchandise of more nearly the "same descriptive properties," which was the test under the 1905 Act. 15 U.S.C.A. §§ 85 and 96. The court said in the Windsor case:

"Surely bottled beverages bearing the name Sunkist belong to the same general class of merchandise as bottled fruit and vegetable juices sold under the same name." (118 F.2d at page 152.)

The Windsor case, decided under the 1905 Act, did not limit likelihood of confusion as to the source of origin as does the Lanham Act, which rules our case. The Windsor case could be cited for the broad proposition that the use of the marks which were likely to cause confusion constituted an infringement if the goods were of the same class. That is what the findings square with in the instant case, and not the provisions of the Lanham Act. The Lanham Act limits the opinion in the Windsor case, and that case does not rule the instant case.

The only finding of the court as to unfair competition is Finding 15, which reads as follows:

"By using the plaintiffs' trade-mark 'Sunkist' in defendants' trade-name, the defendants have competed unfairly with plaintiffs and have been guilty of unfair trade practice."

The basis of the unfair competition is the use of "Sunkist" in the defendants' trade-name, "Sunkist Baking Co." The mere use of a name which the defendants had a right to use does not in and of itself constitute unfair competition. Kellogg Company v. National Biscuit Company, 305 U.S. 111, 59 S.Ct. 109, 83 L.Ed. 73; Quaker Oats Co. v. General Mills, Inc., 7 Cir., 134 F.2d 429.

We do not find it necessary to discuss the very serious charge of the defendants, made here for the first time, that the plaintiffs, because of unclean hands in the use of their trade-marks, are not entitled to the equitable relief they sought and obtained.

For the reasons above set forth, the judgment of the District Court is reversed and the cause remanded, with directions to dismiss the complaint.