POLAROID CORPORATION, Plaintiff-Appellant,

v.

POLARAID, INC., Defendant-Appellee.

No. 13973.

United States Court of Appeals
Seventh Circuit.

June 27, 1963.

James R. Sweeney, Chicago, Ill., Donald L. Brown, Cambridge, Mass., for appellant.

Roger A. Bjorvik, Ebers, Metskas & Bjorvik, Chicago, Ill., for appellee.

Before SCHNACKENBERG, KILEY and MAJOR, Circuit Judges.

MAJOR, Circuit Judge.

Polaroid Corporation (plaintiff) brought this action against Polaraid, Inc. (defendant) for injunctive and other relief, based upon the use by defendant of plaintiff's corporate name or a colorable imitation thereof in connection with the former's business operation. Plaintiff sought relief in a three-count complaint. The first count charged defendant with infringement of plaintiff's federally registered trademark, "Polaroid," by reason of defendant's later adoption and use of "Polaraid" as its trademark, its corporate name and its trade name. The second count charged defendant with unfair competition in appropriating and using as its corporate name its trademark and its trade name, "Polaraid," which is substantially identical and confusingly similar to plaintiff's corporate name, its trade name and its trademark. The third count charged defendant with infringement of plaintiff's Illinois registration of the trademark, "Polaroid," in violation of the Illinois Anti-dilution Statute, Sec. 22, Chap. 140, Smith-Hurd Illinois Revised Statutes. Defendant by answer denied certain material allegations of the complaint.

The case came on for hearing in the District Court solely upon facts as stipulated by the parties. The Court made its findings of fact which in the main follow the stipulated facts, entered its conclusions of law and, based thereon, its judgment dismissing the complaint and each count thereof on the merits. From this judgment entered June 12, 1962, as well as the Court's order of September 18, 1962, denying plaintiff's motion for a new trial, plaintiff appeals.

It may be pertinent to observe that the Court in its order denying plaintiff's motion for a new trial ordered stricken conclusions of law 8, 9, 10, 11 and 12, which related to plaintiff's third cause of action, based upon the Illinois Anti-dilution Statute. Thus, we are presented with a record which contains no conclusions of law relating to the relief sought in count 3. We assume, however, inasmuch as the entire complaint was dismissed, that whether plaintiff was entitled to the relief sought under this count is properly before us. The facts, agreed to by defendant with the exception subsequently noted, are set forth at length in plaintiff's brief. Even though they are not in dispute, we think the importance of the case and the questions involved justify a rather complete statement.

Plaintiff, a Delaware corporation, was incorporated in 1937 and has its principal place of business in Massachusetts. Its predecessor in business used and registered in the United States Patent Office the trademark, "Polaroid." Plaintiff acquired from its predecessor this trademark and good will and has used the trademark since its incorporation. During this period it has obtained 23 additional United States registrations of the trademark, all of which are valid, subsisting and uncanceled.

"Polaroid," plaintiff's trademark and its trade name, is a coined or invented word, it has never been used as a trademark or trade name by any other individual or corporation, and it has acquired the status of a famous-brand trademark. It has been used by plaintiff as its trademark on a wide variety of products, including but not limited to, optical devices, such as polarizing materials, lenses, lamps, display apparatus, advertising signs, goggles, sun glasses, molded plastic filters and other optical elements, photographic products such as cameras, films,

prints, flash guns, processing devices, projectors and the like, television and electrical devices and many other products.

Plaintiff's sales of products under its trademark, "Polaroid," have exceeded 450 million dollars and it has spent approximately 30 million in advertising its products under the said trademark. Since prior to the formation of defendant, plaintiff has sold its products widely in Illinois, Indiana and Iowa, its sales in Illinois alone exceeding 1 million dollars per year. It is licensed to do business in Illinois, maintains a sales office in Chicago and, since March 1960, a regional office in Melrose Park, Illinois.

Plaintiff's products are sold to individual customers, to dealers, to industrial customers including virtually all major United States corporations, to the United States Government, and through wholesale and retail outlets. Its products are sold in every state and in approximately 70 foreign countries. It has more than 12,000 dealers, 620 being in Illinois. Plaintiff enjoys a high reputation with respect to the quality of its products, its financial standing and its credit rating. Its stock is actively traded on the New York Stock Exchange. It is widely and favorably known and, since long prior to the incorporation of defendant, it and its products have been the subject of many gratuitous feature articles appearing in the leading newspapers of Chicago and New York and in numerous other publications of national repute. Plaintiff's trademark, "Polaroid," has acquired such fame that it has appeared in many dictionaries, encyclopedias and textbooks, has been referred to in a number of United States patents issued to other than plaintiff, and has been coupled with "Kodak" and other famous trademarks as an outstanding example of a technically strong, coined famous mark.

Defendant, Polaraid, Inc., is an Illinois corporation, incorporated September 8, 1953, and has its principal office and place of business in Chicago. It is a general contractor specializing in the designing and installation of refrigeration and heating systems. Many of defendant's installations are, like many of plaintiff's products, electrically powered. It buys equipment from others, assembles, installs and at times maintains it. It does an interstate business in Illinois, Indiana and Iowa, and uses "Polaraid" as its trade name and trademark. It affixes its name plate to the equipment which it installs and uses "Polaraid" as a trade name and trademark on its stationery, in its advertising and promotional literature and on its office window. Its sales prior to 1960 never exceeded $500,000 per year, and it spent about $1,000 per year in advertising and promotional literature.

At the time of its incorporation, defendant's present officers and incorporators knew of plaintiff and plaintiff's trademark and trade name, "Polaroid." They adopted "Polaraid" as defendant's corporate name and then used it as defendant's trade name and trademark without the consent of plaintiff. In June 1956, shortly after learning of defendant's unauthorized use of "Polaraid," plaintiff notified defendant that the use of "Polaraid" in its corporate name and as its trademark and trade name infringed upon plaintiff's registered trademark and constituted unfair competition. When defendant persisted in its use, this action was brought.

The stipulation states:

"Instances of confusion in which newspapers, magazines or others have referred to one of the parties while intending to refer to the other or in which mail or other matter intended for one has been directed to or received by the other have occurred * * *."

Then follows a description of seven instances where this sort of confusion took place. Since the entry of the judgment in this case, three additional instances of such confusion have occurred. Defendant on brief agrees that the above statement fairly states the factual situation, with the following addition:

"At the time of defendant's incorporation, the trademark and trade

name POLARAID was selected by defendant's incorporators without considering the possibility of confusion and consisted of the combination of two words, 'POLAR' for cold and 'AID' for service."

Thus, in summary, we have a stipulated situation wherein "Polaroid" is a coined or invented word; that it has been for many years a famous trademark; that it indicates to the public that plaintiff is the source and origin of goods sold and rendered under that trademark; that it has never been used as a trademark or trade name by any other individual, association or corporation; that because of the high quality of plaintiff's products and the quality of its research activities, plaintiff has attained a position of renown in the scientific and commercial worlds and its products, all of which are sold under the trademark, "Polaroid," are well and favorably known to the public, and that plaintiff has acquired valuable good will in its corporate and trade name, "Polaroid." It is stipulated further that defendant, a late-comer with full knowledge of the situation, adopted "Polaraid" as its trade name and trademark, without giving any consideration to the possibility of confusion.

Plaintiff in its brief states:

"This appeal raises primarily the issue of defendant's unfair competition. While the first cause of action is for infringement of plaintiff's federally registered trademark PO-LAROID, the second and third causes of action seek relief on the broader issues of defendant's unfair competition in the appropriation and use of plaintiff's corporate and trade name, and defendant's dilution of plaintiff's trademark and trade name."

We take this to mean that plaintiff believes a more meritorious case is presented under the second and third causes of action than under the first. If so, we agree. More than that, plaintiff is entitled to injunctive relief if the facts support either of the three causes

of action. Therefore, as plaintiff has done in its brief, we shall first consider its second and third causes of action, based upon the alleged unfair competition and the alleged dilution of its trademark and trade name.

In the beginning, we quote a statement from the Supreme Court in American Steel Foundries v. Robertson, Commissioner, et al., 269 U.S. 372, 380, 46 S.Ct. 160, 162, 70 L.Ed. 317, which we think is highly relevant to the instant situation. The Court stated:

"The effect of assuming a corporate name by a corporation under the law of its creation is to exclusively appropriate that name. It is an element of the corporation's existence. Newby v. Oregon Cent. Ry. Co., et al., Deady 609, 616; s. c. 18 Fed.Cas. 38, Case No. 10,144. And, as Judge Deady said in that case:

" 'Any act which produces confusion or uncertainty concerning this name is well calculated to injuriously affect the identity and business of a corporation. And as a matter of fact, in some degree at least, the natural and necessary consequence of the wrongful appropriation of a corporate name, is to injure the business and rights of the corporation by destroying or confusing its identity.'

"The general doctrine is that equity not only will enjoin the appropriation and use of a trade-mark or trade name where it is completely identical with the name of the corporation, but will enjoin such appropriation and use where the resemblance is so close as to be likely to produce confusion as to such identity, to the injury of the corporation to which the name belongs. [Citing cases.]"

It is agreed that the second cause of action based on unfair competition is governed by the law of Illinois. The case most in point and often cited is that of Lady Esther, Ltd. v. Lady Esther Corset Shoppe, Inc., 317 Ill.App. 451, 46 N.E.

2d 165, 148 A.L.R. 6. The facts of that case are quite similar to those here. The plaintiff Lady Esther filed its complaint in equity to enjoin defendant from using the name, "Lady Esther," or any part hereof, or any other name, designation or combination of words similar to plaintiff's name. Plaintiff Lady Esther was and is the well known cosmetic manufacturer. At the time of the litigation it had spent large sums on advertising and its sales were in many millions of dollars. The Court found that the trademark or trade name, "Lady Esther," was a well known symbol for cosmetics, which had become identified with plaintiff's products and was well known in Chicago and throughout the United States.

The defendant operated a corset shop on the west side of Chicago and had a rather small business, with practically no advertising. It used "Lady Esther" only in its business name, that is, its trade name, and did not use it on any of the garments it sold, all of which bore the trademark of the manufacturer or supplier. As the Court stated, there was no competition between the parties and thus no confusion among customers as to the source of goods purchased from either party. In affirming a decree which had provided for injunctive relief, the Court stated (317 Ill.App. page 459, 46 N.E.2d page 169, 148 A.L.R. 6):

> "In the instant case we think it clear that the public might be deceived into thinking there was some connection between the defendant and the plaintiff companies. And the good-will of plaintiff, which it had built up at great expense over a period of years, would be whittled away. Courts of equity ought not to be so feeble as to be unable to prevent this. And the fact that defendant received a charter to use the name 'Lady Esther Corset Shoppe, Inc.,' does not protect it."

Defendant here relies upon the later case of Good Housekeeping Shops, Inc. v. Hyman Kaye and Harry Cohen, trading as Good Housekeeping Table Pad Co., 330 Ill.App. 376, 71 N.E.2d 176,

wherein the Court affirmed a decree which denied injunctive relief. In that case, plaintiff was engaged in the furniture business and sought to enjoin defendant, engaged in the mail order business, from using the words, "Good Housekeeping," in connection with the sale of table pads. Defendant here does not claim that the Court in Good Housekeeping receded from the rule announced in Lady Esther, but distinguished the cases on the facts. The essential and controlling distinction, as the Court stated, is that the words, "Good Housekeeping," are descriptive and that such words could not be appropriated exclusively by plaintiff under the factual situation before it. In contrast plaintiff's trademark and trade name in the instant case was not a descriptive word but was coined and invented.

Plaintiff cites a number of unfair competition cases which hold that injunctive relief is allowable even though there is no competition between the parties. National City Bank of Cleveland v. National City Window Cleaning Co., Ohio App., 180 N.E.2d 20; Safeway Stores, Inc. v. Safeway Properties, Inc., 2 Cir., 307 F.2d 495, and Metropolitan Life Insurance Co. v. Metropolitan Insurance Co., 7 Cir., 277 F.2d 896. In National City, both plaintiff and defendant were engaged in the rendition of a service, the former in the banking business and the latter in washing windows. The Court held that the use of plaintiff's corporate name by defendant would have a tendency to tarnish the trade name established by plaintiff. On appeal the Supreme Court of Ohio sustained the right of the plaintiff to injunctive relief but reversed on a procedural issue (Opinion rendered May 8, 1963. Ohio, 190 N.E.2d 437). The reasoning of the Court is much in point here. Among other things it stated (190 N.E.2d page 438):

> "In a number of earlier cases the position was taken that, in order to entitle one to an injunction restraining another from using a name or title previously adopted or appropriated, a showing had to be made

that the name was being used by the infringer in a competing business. However, in later cases it was reasoned that the use by another, even in a noncompeting business, of the name or title results in a dilution and lessening in value of that name to the original appropriator."

In Safeway Stores, the Court sustained an injunctive decree and stated (307 F.2d page 499):

"Many cases have made it clear that direct competition between the parties is not necessary to enable the plaintiff to obtain injunctive relief. [Citing cases.]"

In Metropolitan, this Court sustained a decree for injunction and in doing so stated (277 F.2d page 900):

"It is well established in Illinois and by the decisions of this circuit that injunctive relief is properly granted in cases involving the use of deceptively similar names even though there is no proof of *actual* confusion. It is sufficient to show the *likelihood* that confusion will result and that the public might be misled. [Citing many cases, including Lady Esther Ltd. v. Lady Esther Corset Shoppe, 317 Ill.App. 451, 46 N.E.2d 165, 148 A.L.R. 6.]"

The Court added, on the strength of the Lady Esther case:

"This is so even where there is no competition between plaintiff and defendant."

True, defendant with some success distinguishes these cases on their facts, but it is the rule of law announced which is important.

The trial Court in its findings emphasized the lack of proof of confusion "by the trade or by the customers" of the parties, the lack of diversion of business or trade from plaintiff to defendant, and the lack of competition between plaintiff's and defendant's products. In our view, these and kindred findings upon which the Court's conclusion that no unfair competition was shown were the result of a misapprehension as to the prevailing law. As shown, proof of competition between the parties is not required, particularly as in the instant case where the defendant adopted the invented and coined trademark and trade name of plaintiff.

In Yale Electric Corp. v. Robertson et al., 2 Cir., 26 F.2d 972, 974, Judge Learned Hand, in discussing the right of an owner to protect his trade name outside the field of his own activities, stated:

"If another uses it, he borrows the owner's reputation, whose quality no longer lies within his own control. This is an injury, even though the borrower does not tarnish it, or divert any sales by its use; for a reputation, like a face, is the symbol of its possessor and creator, and another can use it only as a mask. And so it has come to be recognized that, unless the borrower's use is so foreign to the owner's as to insure against any identification of the two, it is unlawful."

We are not impressed with the reason, or more appropriately the excuse, which defendant gave for adopting the trade name and trademark, "Polaraid," as a combination of the words "polar" signifying cold and "aid" signifying service. It argues, "A legitimate business purpose existed for the selection of the name Polaraid inasmuch as defendant's business is predominantly in the field of refrigeration." The stipulation, however, shows only that "The defendant is a general contractor specializing in the designing and installation of refrigeration and heating systems." Assuming that "polar" signifies cold, there is nothing in the name which signifies heat. Defendant adopted its trade name without even considering the possibility of confusion. Of all the names which were available, it came as near as possible to selecting plaintiff's trademark and trade name. It is argued here that there was no intent on the part of defendant to trade on the value of plaintiff's name. Such intent, however, as this Court pointed out in Metropolitan Life Ins. Co. v.

Metropolitan Insurance Co., 7 Cir., 277 F.2d 896, 900, is immaterial.

In our view and we so hold, the District Court erred in denying injunctive relief to plaintiff, based upon its cause of action charging unfair competition. Paraphrasing the language of the Supreme Court in American Steel Foundries v. Robertson et al., 269 U.S. 372, 381, 46 S.Ct. 160, 70 L.Ed. 317 (heretofore quoted), equity will enjoin the appropriation and use of the name of a corporation where the resemblance is so close that it is likely to produce confusion, to the injury of the corporation to which the name belongs.

Plaintiff's third cause of action seeks injunctive relief under the Illinois Anti-dilution Statute, Chap. 140, Sec. 22, Illinois Revised Statutes, which reads, so far as material:

"Every person [Sec. 23 of the same Act defines 'person' as including a corporation] * * * adopting and using a mark, trade name * * * may proceed by suit, and all courts having jurisdiction thereof shall grant injunctions, to enjoin subsequent use by another of the same or any similar mark, trade name * * * if there exists a likelihood of injury to business reputation or of dilution of the distinctive quality of the mark, trade name * * * notwithstanding the absence of competition between the parties or of confusion as to the source of goods or services * * *."

Thus, the Act furnishes the basis for two causes of action: (1) if there exists a likelihood of injury to business reputation or (2) if there is a dilution of the distinctive quality of the mark or trade name. Moreover, it relieves an aggrieved party of the burden of proving competition between the parties or proving confusion as to the source of goods or services. Unfortunately, we are aware of no Illinois case which has construed this provision, but by its plain, unambiguous language it lays a heavy hand upon one who adopts the trade name or mark of another.

Callmann in "The Law of Unfair Competition and Trademarks," 2nd edition 1950, at page 1643, defines dilution as follows:

"The gravamen of a dilution complaint is that the continuous use of a mark similar to plaintiff's works an inexorably adverse effect upon the distinctiveness of the plaintiff's mark, and that, if he is powerless to prevent such use, his mark will lose its distinctiveness entirely. This injury differs materially from that arising out of the orthodox confusion * * *. Such confusion leads to immediate injury, while dilution is an infection which, if allowed to spread, will inevitably destroy the advertising value of the mark."

Defendant argues that the Anti-dilution Statute is inapplicable because there is no finding that any representations were made to customers, prospective customers of plaintiff or to the general public that defendant is in any way connected with plaintiff or that any customer of defendant believed he was dealing with plaintiff; the parties' products are not sold through the same outlets or to the same type of customer; the parties advertise in different media, and there is no showing of an intent on the part of defendant to capitalize on the good will of plaintiff. This is a traditional argument made against a charge of unfair competition and even there, as previously shown, it is without force where a party adopts the invented or coined trademark or trade name of another.

Defendant cites two cases in support of its contention on this point. HMH Publishing Co., Inc. v. Playboy Records, Inc., D.C., 161 F.Supp. 540, and Esquire, Inc. v. Esquire Slipper Mfg. Co., Inc., 1 Cir., 243 F.2d 540. In the Playboy case, the District Court held that the complaint stated a cause of action for trademark infringement and unfair competition. In connection with its discussion of the latter issue, the Court re-

ferred to the Anti-dilution Statute as follows (161 F.Supp. page 544):

> "The broad language of this provision, together with the holdings of the Lady Esther case and decisions subsequent thereto, makes it clear that under Illinois law a cause of action for unfair competition may be brought even though the products involved in the suit are non-competitive and unrelated."

The Esquire case is also of no aid to defendant. There, the Court (243 F.2d page 544) quoted and discussed the Anti-dilution Statute of Massachusetts, quite similar to that of Illinois. The gist of the holding was that a court was not under a mandatory duty to grant injunctive relief under all circumstances. Even so, the Court approved of an injunction which limited defendant's use of the word, "Esquire." This result flowed from the Court's reasoning that Esquire "is not a coined word but one firmly established in the English vocabulary," that it was "an already diluted name" when the plaintiff selected it, that the protection accorded to such a weak name "is not as broad as that which might be accorded to a strong, coined name, as 'Kodak,' for instance," and that plaintiff was entitled only to such valuable good will as attached to the name "so far as it belongs to the plaintiff." By contrast, in the instant case plaintiff's trademark and trade name was original—it was coined and invented— and was a strong name exclusively appropriated by plaintiff. It was a name which through much effort and the expenditure of large amounts of money had acquired a widespread reputation and much good will, which plaintiff should not be required to share with defendant.

The record discloses there were numerous incidents of confusion as to identity of the parties, but even without proof the conclusion is inescapable that such would be the result, due to the close resemblance of defendant's trade name to that of plaintiff. If the Anti-dilution Statute is not applicable to this situation,

it is useless because it adds nothing to the established law on unfair competition and, as heretofore noted, the District Court entered no conclusions in support of its dismissal of the alleged violation of this provision.

We conclude that plaintiff is entitled to injunctive relief against defendant, as prayed for in its complaint, for either unfair competition or for a violation of the Illinois Anti-dilution Statute, or both, without an award of damages or profits. In view of our holding relative to the second and third causes of action, we find no occasion to discuss or decide the issue of trademark infringement as asserted in plaintiff's first cause of action.

The judgment is reversed and the cause remanded, with directions to proceed in accordance with this opinion, each party to pay its own costs.

SCHNACKENBERG, Circuit Judge, (dissenting).

1. As to plaintiff's first cause of action, which is for infringement of its federally registered trade-mark "POLAROID", 15 U.S.C.A. §§ 1114(1) (a), 1116, 1117 and 1118, I note that, in an opinion by Judge Minton (later Justice Minton of the United States Supreme Court), concurred in by Judge Major, this court in California Fruit Growers Exchange v. Sunkist Baking Co., 166 F.2d 971 at 973 (7 Cir., 1947), remarked that "[f]ruits and vegetables are not in the same general class of merchandise as bread," and, at 974, we held:

> "The unconscionable efforts of the plaintiffs to monopolize the food market by the monopoly of the word 'Sunkist' on all manner of goods sold in the usual food stores should not be sanctioned by the courts. The trade-marks should be confined substantially to the articles for which they were authorized, otherwise, why limit the marks at all? Before a trade-mark can be granted under the applicable Lanham Act, the application therefor must name the products to which it is to apply. 15 U.S.C.A. § 1051. * * *"

This court resorted to common sense, 166 F.2d at 973, when it said:

"Unless 'Sunkist' covers everything edible under the sun, we cannot believe that anyone whose I. Q. is high enough to be regarded by the law would ever be confused or would be likely to be confused in the purchase of a loaf of bread branded as 'Sunkist' because someone else sold fruits and vegetables under that name. The purchaser is buying bread, not a name. If the plaintiffs sold bread under the name 'Sunkist,' that would present a different question; but the plaintiffs do not, and there is no finding that the plaintiffs ever applied the word 'Sunkist' to bakery products."

Further, the court, 166 F.2d at 976, said:

" * * * The mere use of a name which the defendants had a right to use does not, in and of itself constitute unfair competition. Kellogg Company v. National Biscuit Company, 305 U.S. 111, 59 S.Ct. 109, 83 L.Ed. 73; Quaker Oats Co. v. General Mills, Inc., 7 Cir., 134 F.2d 429."

The weakness of plaintiff's contention as to its cause of action for trade-mark infringement has resulted in its practical abandonment, as evidenced by Judge Major's withholding of approval of that contention, page 833, ante.

2. As to the charge of unfair competition in the appropriation and use of plaintiff's corporate and trade-name (to quote from plaintiff's brief), we said in Independent Nail & Packing Co. v. Stronghold Screw Products, 205 F.2d 921 at 926 (1953):

"We think that the test under the Illinois law is whether the adoption and use of a name by defendant is likely to cause confusion in the trade as to the source of products, or is likely to lead the public to believe that the defendant is in some way connected with the plaintiff. * * "

Plaintiff produces and sells optical devices, photographic products, projectors, television and electrical devices and many other products, to which Judge Major refers. Its trade-name is "POLAROID".

Defendant designs and installs refrigeration and heating systems. For instance, it makes and services skating rinks and cold storage equipment for industrial plants. Defendant buys equipment from manufacturers, assembles and installs it, and then sometimes furnishes a maintenance service therefor.

Defendant's sales volume for the fiscal year ending August 31, 1960 was $710,000. Since its incorporation in Illinois in 1953, as "POLARAID, INC.", its principal office and place of business have been in Chicago, Illinois. It has spent about $1000 per year in advertising and promotional literature. It has advertised in skating rink magazines and in trade journals.

Four examples of defendant's advertisements are in evidence.

*One,* which was apparently taken from "Arena, Auditorium & Stadium Guide", shows at the left-hand upper corner of a rectangular print a reproduction of a smiling solar face, with a figure of a polar bear in the foreground and a horizontal line intersecting a large inclined capital "P". At the right end of the line is the inscription "inc." and to the right of this complex appears the following printed language:

Quality Ice Rinks
P O L A R A I D
3840 No. Harlem Ave., Chicago 34, Ill.

The *second* example is as follows:

In the right-hand upper corner is a repetition of the complex referred to in the corner of the first example. At the left thereof appears the following material:

Quality
P O L A R A I D
Ice Rinks

Below appears the following printed matter:

Designed — Engineered — Constructed

---

## TO MEET YOUR REQUIREMENTS

| There Is No Substitute | PERMANENT |
| --- | --- |
| For Knowledge & Experience | and PORTABLE ICE |
| Let our experience guide you in selection of location, type of installation, kind of refrigeration, engineering; your entire project from start to finish. | FACILITIES All Sizes * ICE STUDIOS * |

POLARAID inc. 3840 No. Harlem Ave.,      Chicago 34, Ill.

---

The *third* example is as follows:

---

### P O L A R A I D   I N C.
Refrigeration

Air Conditioning * Process Piping

Industrial — Commercial

1606 N. Meade Ave.
Chicago 39, Ill.
NAtional 2-7220

---

The *fourth* example is a reproduction of the business card of defendant's president. In reduced size it contains the same complex heretofore referred to in the first two examples and has the following addition:

| Refrigeration | * Air Conditioning | * Process Piping |
| --- | --- | --- |
| | | 3840 N. Harlem Ave. |
| Ralph A. Gotlund | | Chicago 34, Illinois |
| President | | Phone NAtional 2-7220 |

The majority opinion relies on Safeway Stores, Inc. v. Safeway Properties, Inc., 307 F.2d 495 and Metropolitan Life Insurance Co. v. Metropolitan Insurance Co., 7 Cir., 277 F.2d 896, as well as National City Bank of Cleveland v. National City Window Cleaning Company, Ohio App., 180 N.E.2d 20.

All of these cases involved the use by a defendant of the *same* name as that used theretofore by the plaintiff, who brought suit. In the case at bar, not only were the businesses of plaintiff and defendant as different as black and white, but the defendant used a different name. It differed not merely in spelling but in meaning. Defendant's use of the invented word "POLARAID" was an openly sincere effort to identify the user with a particular type of service and business in which it was engaged, which was essentially different from that which plaintiff was conducting. The use of the word "polar" to suggest cold was emphasized by inserting the figure of a polar bear, and the word "aid" was used in conjunction therewith. "Aid" is a common word and is a synonym for the word "service."

Not only was the word "POLARAID" used in connection with express references to ice rinks, refrigerating and air conditioning, so as to fix in the mind of the reader the significance of the figure of a polar bear, but an actual contrast between "POLARAID" and the well-known "POLAROID" of plaintiff was accentuated and impressed upon even the most casual observer.

I enlist Judge Minton's statement that " * * * we cannot believe that anyone whose I. Q. is high enough to be regarded by the law would ever be confused" by defendant into buying, for instance, a skating rink when he intended to buy a camera.

3. As to the third cause of action, plaintiff relies on the Illinois Anti-dilution statute of 1955, § 22, ch. 140, Illinois Revised Statutes (1961) and Judge Major quotes from that act. While he finds no Illinois case which has construed its provisions, at page 836, ante, he says

he feels that it lays a heavy hand upon one who adopts the trade-name or mark of another.

Undoubtedly the Illinois act is similar to a Massachusetts act on the same subject, which Judge Major admits at page 837, ante.

In Esquire, Inc. v. Esquire Slipper Mfg. Co., 1 Cir., 243 F.2d 540 (1957), plaintiff was the publisher of a monthly magazine called "Esquire". Defendant was a corporation engaged in the manufacture of men's slippers. Plaintiff in its suit sought an injunction restraining defendant from any use of the word "Esquire", either in its corporate name, or on its product or in its advertising.

The court of appeals pointed out 243 F.2d at 542:

"This is obviously a dilution case, for clearly the parties are not directly competing with one another in the sale of similar goods. * * * "

The court pointed out 243 F.2d at 543 that the word "Esquire" is *not* a coined word and that it carries implications of gentility in an aura of wealth. The court recognized that, while plaintiff picked an already diluted name as the mark for its magazine, this did not mean that plaintiff was entitled to no protection for its name.

In referring to the Massachusetts statute, Mass.G.L. (Ter. ed.) ch. 110 § 7A, pertaining to dilution, the court said, 243 F.2d at 544:

"This statute might be read as requiring as a matter of law that in Massachusetts courts of equity in trade-mark infringement and unfair competition cases give the plaintiff injunctive relief no matter how weak the plaintiff's mark may be, against a defendant whose actions create any likelihood of dilution of whatever distinctive quality the plaintiff's mark may have. But so to read the statute would be to fly in the face of the general principle that courts are not to presume a legislative intention to rigidify the traditionally flexible equity practice of granting or with-

holding injunctive relief in the exercise of sound judicial discretion. Hecht Co. v. Bowles, 1944, 321 U.S. 321, 330, 64 S.Ct. 587, 88 L.Ed. 754. * * *"

The court also said:

"For the reasons already stated we reject the plaintiff's contention that it is legally entitled to all the injunctive relief it asked for in its complaint. *The scope of the relief* of that nature to which it is entitled under either the Lanham Act or the Massachusetts statute is *primarily a matter for the District Court with which we would only interfere were we convinced that the trial court's conclusion resulted from an error of law, or an abuse of discretion. We find neither here.* * * *" (Emphasis supplied.)

In the case at bar the district court made these findings:

6. There is no evidence from which the court could find that the name of defendant corporation was adopted with intent or purpose to infringe upon or dilute plaintiff's rights in the name "POLAROID", and the court therefore finds that the name of defendant corporation was adopted without such intent or purpose.

7. There is no evidence from which the court coud find that defendant's selection and use of the word "POLARAID" as its trade name, trademark, and service mark, was with intent or purpose to infringe upon or dilute plaintiff's rights in the word "POLAROID", and the court therefore finds that the selection and use of the word for such purposes was without such intent or purpose.

8. There has been presented to the court no evidence or instances of confusion by the trade or by customers concerning the respective products or identities of the parties, and the court therefore finds that there has been no such confusion by the trade or by the customers.

9. There has been presented to the court no evidence showing directly, inferentially or otherwise, that any business or trade has been diverted from plaintiff to defendant, or that any such diversion is likely to occur, and the court therefore finds that no such diversion has occurred or is likely to occur.

The court also concluded as a matter of law:

7. Under the circumstances set forth in the findings of fact herein, the use by defendant of the trademark and service mark "POLAR-AID" does not render likely injury to plaintiff's business reputation, and does not constitute the dilution of the distinctive quality of plaintiff's Illinois trademark "POLAROID."

For all of these reasons I would affirm the order entered by Judge Miner.