**Keith CARPENTER, Plaintiff,**

v.

**Cecil D. ANDRUS, Secretary of the United States Department of Interior; the Director, United States Fish and Wildlife Service; and the United States of America, Defendants,**

v.

**ONE LEOPARD SKIN AND SKULL (PANTHERA PARDUS) seized at John J. Kennedy International Airport, Queens County, New York, from Lufthansa-German Airlines on September 26, 1977, Third-Party Defendant.**

Civ. A. No. 79–126.

United States District Court, D. Delaware.

Jan. 29, 1980.

William H. Uffelman, Jr., Biggs & Battaglia, Wilmington, Del., for plaintiff.

James W. Garvin, Jr., U. S. Atty., Peggy L. Ableman, Asst. U. S. Atty., Wilmington, Del., for defendants.

## OPINION

MURRAY M. SCHWARTZ, District Judge.

In this action, a case of first impression, the plaintiff, Keith Carpenter, seeks to enjoin forfeiture of a leopard skin and skull and to compel the defendants, Secretary of the Department of the Interior, Director of the United States Fish and Wildlife Service, and the United States of America, to return the leopard skin and skull to their point of origin in West Germany. The defendants counterclaim, joining the leopard skin and skull as third-party defendants and seeking their forfeiture to the United States of America under Section 11(e)(4)(A) of the Endangered Species Act of 1973, 16 U.S.C. § 1540(e)(4)(A).

On September 26, 1977 the United States Fish & Wildlife Service ("the Service") seized a leopard skin and skull belonging to the plaintiff, which had arrived in New York en route from Kenya to Haiti on a Lufthansa Airlines flight. The leopard was of species *panthera pardus*, listed as endangered under 50 C.F.R. § 17.11. On or about February 3, 1978 the Service notified the plaintiff that it had detained the leopard skin and skull under the Endangered Species Act, 16 U.S.C. §§ 1531–43 ("the Act"). On July 25, 1978 the Service sent a Notice of Violation to the plaintiff, seeking a $5000 civil penalty for having knowingly imported the skin and skull of an endangered species in violation of Section 9(a)(1)(A) of the Act, 16 U.S.C. § 1538(a)(1)(A). The plaintiff submitted evidence to the Service that he had shot the leopard in Kenya in the spring of 1977 legally and under license of the government of Kenya, that he had directed a shipping agent not to send the leopard skin and skull to the United States, and that it was sent to this country through a mistake of the shipping agent. (Doc. No. 23, Ex. K). On the basis of this evidence the Service terminated the civil penalty proceeding on January 11, 1979, finding that the plaintiff did not violate the Act and that the leopard skin and skull were sent into the United States accidentally. In the termination notice the Service indicated that it would seek forfeiture of the leopard skin and skull in a United States District Court. On March 8, 1979 the plaintiff filed a complaint, commencing the present ac-

tion, and on May 8, 1979 the defendants filed their answer and ·counterclaim. Both parties moved for summary judgment, and on November 29, 1979 the Court heard oral argument on the cross-motions. For the reasons set forth below, plaintiff's motion will be granted.

·The issue in this case is whether Section 1540(e)(4)(A) subjects property consisting of an endangered species to forfeiture, when the owner of the property has not violated the Act. The defendants contend that delivery of the leopard skin and skull to this country by Lufthansa provides the requisite basis for forfeiture. They argue that regardless of who owns the leopard skin and skull, Lufthansa violated the Act by importing them into the country, and consequently the property is forfeitable.

The purpose of the Endangered Species Act is to provide a program for the preservation of threatened and endangered species. 16 U.S.C. § 1531(b). Toward this end Congress has empowered the Secretary of Commerce or the Secretary of the Interior to determine whether any species is "threatened" or "endangered," 16 U.S.C. § 1533; see id. § 1532(10), and has enacted provisions directed at conserving such species. The measures provided for include acquisition of land in protection of the natural habitat of · such species, 16 U.S.C. § 1534, and the provision of financial assistance to foreign countries in order to encourage them to pursue a policy of conservation. 16 U.S.C. § 1537. The sections of the Act most relevant to the case at bar, however, are Section 1538, dealing with prohibited acts, and Section 1540, providing for penalties and enforcement. The provision governing this suit is subsection (e)(4)(A) of Section 1540, which reads as follows:

> All fish or wildlife or plants taken, possessed, sold, purchased, offered for sale or purchase, transported, delivered, received, carried, shipped, exported, or imported contrary to the provisions of this Act, any regulation made pursuant thereto, or any permit or certificate issued hereunder shall be subject to forfeiture to the United States:

16 U.S.C. § 1540(e)(4)(A). The government contends that the leopard skin and skull are within this forfeiture provision because they were imported contrary to subsection (a)(1)(A) of Section 1538, which provides that it is "unlawful for any person subject to the jurisdiction of the United States to . . . import any . . . [endangered] species." 16 U.S.C. § 1538(a)(1)(A).

While ·the government's interpretation may be in accord with the literal terms of the provisions of the Act, it is not immediately clear that it conforms to the intended implementation of the Act. The position of the government assumes that a common carrier violates the Act when it unknowingly transports an endangered species into the United States at the direction of another party. The language of Section 1538(a)(1)(A) is · broad enough to support this assumption, as is the statutory definition of "import." [1] The difficulty with this interpretation of the Act, however, is that it would appear to place a substantial burden on common carriers. Because Section 1538(a)(1)(A) prohibits not only knowing importation but any importation of endangered species, common carriers would in effect have a strict duty to inspect their freight to assure that it did not contain any endangered species. The Court finds that this burden was not intended by Congress to be placed upon common carriers and that the leopard skin and skull are not subject to forfeiture.

An analysis of the legislative history of the Endangered Species Act and its amendments reveals that Congress intended the forfeiture provisions of the Act to apply primarily to innocent violations by tourists

---

1. Section 1532(7) provides:

The term "import" means to land on, bring into, or introduce into; or attempt to land on, bring into, or introduce into, any place subject to the jurisdiction of the United States, whether or not such landing, bringing, or introduction constitutes an importation within the meaning of the customs laws of the United States.

or hunters.[2] Although Section 1540(a)(1) subjects all violations of the Act, even unknowing or unintentional violations, to a fine of at least $500, Congress believed that for the "casual hunter or tourist," "simple forfeiture should prove to be an ample deterrent."[3] There is no indication in the legislative history that forfeiture is appropriate where, as here, the owner of the property had no involvement whatsoever in the violation of the Act. *See United States v. U. S. Coin & Currency*, 401 U.S. 715, 91 S.Ct. 1041, 28 L.Ed.2d 434 (1971), where, with regard to 26 U.S.C. § 7302, another forfeiture statute, the Supreme Court wrote:

> Although it is true that the statute does not specifically state that the property shall be seized only if its owner significantly participated in the criminal enterprise, we would not readily infer that Congress intended a different meaning.

401 U.S. at 719, 91 S.Ct. at 1043.

Similarly, the Court is unwilling to readily assume that Congress intended common carriers to be subject to civil penalties for the unknowing transportation of endangered species and to subject unknowing individuals to the forfeiture of their property under these circumstances.

Indeed, to construe this statute in a manner which would allow federal authorities to obtain the forfeiture of plaintiff's property, based upon a violation by Lufthansa, would raise a very serious constitutional issue of due process. In *Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974), the Supreme Court rejected the view that the forfeiture of property whose owner had no role in any allegedly unlawful conduct necessarily constitutes a denial of due process. However, the Court indicated in *dictum* that due process might preclude such action against property whose owner "had done all that reasonably could be expected to prevent the proscribed use of his property." 416 U.S. at 689, 94 S.Ct. at 2095. There is

no question that plaintiff did "all that reasonably could be expected" to prevent the leopard skin and skull from entering the country. Plaintiff's uncontradicted affidavit states that his specific instructions to the shipping agent in Africa were not to ship the property to the United States, but to ship it to Mr. Richard DuPont in Haiti. Plaintiff offered to hire a private plane to fly his property to Haiti, but was assured that this would be unnecessary since the property would not enter the United States. Through an error of a junior clerk in the office of the shipping agent, the property was transported to Haiti via New York where it was seized. (Doc. No. 24; Doc. No. 23, Exs. H, K).

■ Finally, it is a well-settled principle of statutory interpretation that where a serious doubt concerning the constitutionality of a congressional statute is raised, the Court must first ascertain whether "a construction of the statute is fairly possible by which the question may be avoided." *Crowell v. Benson*, 285 U.S. 22, 62, 52 S.Ct. 285, 296, 76 L.Ed. 598 (1932); *United States v. Thirty-Seven (37) Photographs*, 402 U.S. 363, 369, 91 S.Ct. 1400, 1404, 28 L.Ed.2d 822 (1971). A construction of the Endangered Species Act prohibiting the forfeiture of property unknowingly transported into the country by a common carrier is "fairly possible" and avoids the serious constitutional issue raised by plaintiff.

■ The defendants contend that the leopard skin and skull are contraband *per se* and, therefore, simple dominion, possession and control of them is an offense rendering them subject to forfeiture. The defendants cite no authority that supports this proposition, relying instead on the general policy underlying the Act. That policy, they argue, is to protect endangered species by taking away a market for them in the United States. While the events that have transpired may have tended to defeat this policy, a determination that the property is

---

**2.** [1973] *U.S.Code Cong. & Admin.News*, pp. 2989, 3006; [1978] *U.S.Code Cong. & Admin. News*, pp. 9453, 9476, 9493.

**3.** [1973] *U.S.Code Cong. & Admin.News*, pp. 2989, 3006.

324

contraband or otherwise subject to forfeiture cannot be based solely on the policy underlying the Act; such a determination must have a specific statutory basis. The Endangered Species Act contains no basis for reaching such a finding. Moreover, the term "contraband article," as defined in detail at 49 U.S.C. § 781, does not include endangered species.

The defendants' final contention is that the failure to allow the forfeiture would usurp the discretionary authority of the Secretary of the Interior to issue exemptions from the Act. This argument presupposes that the leopard skin and skull fall within the provisions of this Act. Because the property is not subject to forfeiture, however, the discretionary authority of the Secretary to allow exceptions is not an issue.

In accordance with this opinion, an order will be entered granting plaintiff's motion for summary judgment and denying that of the defendants. The defendants will be ordered to return the seized property. However, plaintiff is not entitled to keep the property in the United States, for that would contravene the policy of the Endangered Species Act.[4]

4. Although plaintiff's complaint prays for an order directing the defendants to return the property to its point of origin, Frankfurt, Germany, plaintiff contended at oral argument that he should now be allowed to keep the property in the United States.