Toy LYKINS

v.

ALUMINUM WORKERS INTERNATIONAL UNION and Aluminum Workers International Union, Local 480.

Civ. A. No. 79–2580.

United States District Court,
E. D. Pa.

Dec. 19, 1980.

Robert E. Cohen, Markowitz & Kirschner, Philadelphia, Pa., for plaintiff.

Thomas A. Beckley, Beckley & Madden, Harrisburg, Pa., for defendant.

MEMORANDUM

CAHN, District Judge.

Before the court is the motion of defendants Aluminum Workers International Union and Aluminum Workers International Union, Local 480, for summary judgment. For the reasons set forth below, defendants' motion will be denied.

### I. *JURISDICTION*

Plaintiff pleads jurisdiction under 28 U.S.C. § 1331(a). However, jurisdiction is not proper under § 1331(a) because plaintiff does not and apparently cannot allege an amount in controversy in excess of $10,000. However, this case involves the operation of § 8(a)(3) of the National Labor Relations Act, 29 U.S.C. § 158(a)(3), which permits union security clauses. Thus, jurisdiction is proper pursuant to 28 U.S.C. § 1337(a) because the action arises under an act of

1. This case was decided under former 28 U.S.C. § 41(8) which is the predecessor to § 1337(a).

2. In his original complaint, plaintiff alleged that jurisdiction under § 1337(a) was proper be-

Congress regulating commerce. *American Federation of Labor v. Watson,* 327 U.S. 582, 66 S.Ct. 761, 90 L.Ed. 873 (1946).[1] Plaintiff does not plead this basis for jurisdiction in his amended complaint.[2] I accept jurisdiction of the case on this basis and will grant plaintiff leave to file a second amended complaint to reflect this correct basis of jurisdiction.

### II. *FACTS*

Plaintiff Toy Lykins brought this action in July 1979 against defendants Aluminum Workers International Union (International) and Aluminum Workers International, Local 480 (Local 480), seeking declaratory and injunctive relief. Plaintiff claims that defendants' use of plaintiff's union dues for purposes other than collective bargaining, contract administration or grievance adjustment against his wishes violates his first amendment rights to free speech and association.

Plaintiff works at Schuylkill Products, Inc. at its plant in Cresona, Schuylkill County, Pennsylvania. Defendant International is the certified representative for purposes of collective bargaining of plaintiff and other Schuylkill Products employees.

In December 1978 Schuylkill Products and defendants entered into a collective bargaining agreement. Article I, Section 10 of that agreement contains a union security clause requiring all employees covered by the agreement "to become or remain members . . . in good standing of the Union with respect to payment of Union membership dues as a condition of employment."

After the signing of the collective bargaining agreement, plaintiff sent a letter to defendant Local 480 stating in part:

> I do not intend to rejoin the Aluminum Workers International Union but I know I must pay a fee to be able to work. However, I would like an account of how my fee has been spent.

cause his action arises under the Labor Management Reporting and Disclosure Act of 1959, 29 U.S.C. § 401, *et seq.*

I demand that my fee only be used for collective bargaining.

(Amended Complaint, Exhibit B). Defendants responded that plaintiff could learn how his dues were being spent by attending the monthly union meeting. (Amended Complaint, Exhibit C). In January 1979, plaintiff paid defendants an initiation fee of $25. Beginning in January 1979 and presumably continuing to the present, plaintiff has paid defendants $7.94 each month in dues.

Plaintiff alleged in his complaint that defendants are spending all or a portion of the money he must pay as a condition of employment for purposes other than collective bargaining, contract administration and grievance adjustment with the employer in violation of plaintiff's first amendment rights. Plaintiff further alleges he is unable to identify the precise expenditures to which he objects because defendants have not yet accounted for the expenditure of plaintiff's contribution to the union. (Amended Complaint at 6).

Defendants have moved for summary judgment on the following grounds: (1) lack of justiciable controversy; (2) plaintiff's failure to exhaust administrative or statutory remedies; (3) lack of first amendment violation.[3]

## III. DISCUSSION

### A. THIS CASE PRESENTS A JUSTICIABLE CONTROVERSY

■ Defendants argue that plaintiff can prove no actual injury here and therefore that no justiciable case or controversy exists. I disagree.

Plaintiff alleged in his amended complaint that,

Defendants are expending all or a portion of the moneys exacted from him as a condition of employment, authorized and made enforceable by § 8(a)(3) of the NLRA, for purposes other than collective bargaining, contract administration and grievance adjustment with the Employer . . . .

(Amended Complaint at 6). Defendants admit that plaintiff paid them an initiation fee of $25 and monthly dues of $7.94. (Answer to Amended Complaint at 4). Therefore, defendants already have plaintiff's money, and plaintiff alleges defendants are spending that money in violation of plaintiff's first amendment rights. Because plaintiff claims he is unable to identify the precise expenditures to which he objects because defendants have yet to account to plaintiff as to how they spent his money and because "[t]o require greater specificity would confront an individual employee with the dilemma of relinquishing either his right to withhold his support of ideological causes to which he objects or his freedom to maintain his own beliefs without public disclosure," *Abood v. Detroit Board of Education*, 431 U.S. 209, 241, 97 S.Ct. 1782, 1802, 52 L.Ed.2d 261 (1977) (footnote omitted), I hold that plaintiff has stated a justiciable controversy.

### B. PLAINTIFF'S ACTION IS NOT BARRED BY ANY FAILURE TO EXHAUST STATUTORY OR ADMINISTRATIVE REMEDIES

Defendants contend that plaintiff somehow failed to take advantage of remedies available under § 201(c) of the Labor-Management Reporting and Disclosure Act of 1959, 29 U.S.C. § 431(c), which requires every labor organization to make available to its members the financial reports which it must file with the Secretary of Labor.[4]

---

3. Defendants raised several defenses in their answer to the amended complaint which are not included as grounds for their summary judgment motion and so are not treated herein. These include: (1) lack of federal jurisdiction; (2) plaintiff's failure to exhaust internal union remedies available to him under the constitution and by-laws of the defendants; (3) the fact that plaintiff's action is being encouraged and financed by the Pennsylvania Right to Work

Committee, which defendants allege is an interested employer or employer association within the meaning of § 101(a)(4) of the Labor Management Reporting and Disclosure Act of 1959, 29 U.S.C. § 411(a)(4), so that plaintiff's action should be dismissed as violating that law.

4. Because the issue is not raised in defendants' summary judgment motion, I express no opinion as to whether plaintiff had a duty to ex-

What defendants mean by this, apparently, is that plaintiff did not go to meetings where accountings and copies of required financial reports were distributed to members and this should bar him from complaining about how his contributions are being spent.

Section 201(c) of the Act does not provide any remedy for the misappropriation of funds of which plaintiff complains. Rather, that section provides for the flow of information to union members:

> [E]very . . . labor organization and its officers shall be under a duty enforceable at the suit of any member of such organization in any State court of competent jurisdiction or in the district court of the United States for the district in which such labor organization maintains its principal office, to permit such member for just cause to examine any books, records, and accounts necessary to verify such [financial] report.

Therefore, plaintiff is actually pursuing the remedy available to him under § 201(c).

Further, defendants argue that plaintiff should be barred by a failure to exhaust § 201(c) remedies because he never made a demand for these reports. This argument fails for two reasons. First, plaintiff did demand "an account of how my fee has been spent." Second, plaintiff eventually did get the § 201 reports and found that they did not give him all the information he needed to find out whether his money was being spent for political or ideological causes in contravention of his wishes.[5]

■ Finally, whether or not plaintiff is a nominal union member, he has no duty to attend union meetings. Under any union shop clause, the most that can be expected of a member under § 8(a)(3) of the NLRA is that he pay dues and fees. *NLRB v. General Motors Corp.*, 373 U.S. 734, 742, 83 S.Ct.

1453, 1459, 10 L.Ed.2d 670 (1963); *Radio Officers' Union v. NLRB*, 347 U.S. 17, 41, 74 S.Ct. 323, 336, 98 L.Ed. 455 (1954). It is unlawful to discharge an employee under a union shop clause who pays dues but refuses to comply with other obligations of union membership. *NLRB v. Hershey Foods Corp.*, 513 F.2d 1083, 1087 (9th Cir. 1975). Therefore, whether or not defendants perceive plaintiff as a "member" of the defendant union, he has no obligation to go to meetings. This cannot affect his first amendment rights or his right to receive information under § 201(c) of the Labor Management Reporting and Disclosure Act. Moreover, plaintiff alleges that he felt intimidated by other union members and that his family had been subjected to threats. Under these circumstances, defendants' argument that plaintiff should have gone to meetings in order to find out how his union was spending his money borders on the ridiculous.

## C. CERTAIN EXPENDITURES BY THE UNION FOR PURPOSES OTHER THAN COLLECTIVE BARGAINING, CONTRACT ADMINISTRATION OR GRIEVANCE ADJUSTMENT WOULD EXCEED THE AUTHORIZATION BY THE NLRA OF UNION SHOP CLAUSES

### 1. THERE IS GOVERNMENTAL ACTION HERE

Union shop clauses are permitted in part through the operation of § 8(a)(3) of the National Labor Relations Act, 29 U.S.C. § 153(a)(3). If the NLRA, through its authorization of union shop clauses, operated to deprive union dissenters of rights protected by the first amendment, the NLRA would be unconstitutional as applied. Rather than hold the statute unconstitutional as applied, the statute should be in-

---

haust any remedies made available by the constitution or by-laws of defendants International and Local 480.

5. The § 201 report is called a Labor Organization Annual Report, Form LM–2. The report for the year April 1, 1978, to March 32, 1979, is attached as an exhibit to plaintiff's Opposition

to Motion for Protective Order. The report lists an expenditure of $5,090 for the "Action Committee" (Schedule # 14) which may or may not contain expenditures for ideological purposes in violation of plaintiff's first amendment rights.

terpreted to avoid interfering with dissenters' first amendment rights. However, in order to find that this danger of unconstitutionality exists, I must find actions sufficiently imbued with governmental action to support a claim of unconstitutionality. The first amendment only protects against deprivations of free speech or other specified rights through governmental action.[6]

The governmental action required to make out a violation of the first amendment is present here because the union shop clause under which plaintiff must pay dues to defendant exists by operation of the National Labor Relations Act. If the employer here refused to enforce the union shop clause, defendants could sue the employer in court. The courts would then enforce the clause.

The Supreme Court has held governmental action is involved in the operation of union shop clauses:

> If private rights are being invaded, it is by force of an agreement made pursuant to federal law which expressly declares that state law is superseded. *Cf. Smith v. Allwright*, 321 U.S. 649, 663 [64 S.Ct. 757, 764, 88 L.Ed. 987.] In other words, the federal statute is the source of the power and authority by which any private rights are lost or sacrificed. The enactment of the federal statute authorizing union shop agreements is the governmental action on which the Constitution operates, though it takes a private agreement to invoke the federal sanction.

*Railway Employees' Department v. Hanson*, 351 U.S. 225, 232, 76 S.Ct. 714, 718, 100 L.Ed. 1112 (1956) (footnote and citations omitted).

Although *Hanson* deals with the provision of the Railway Labor Act, 45 U.S.C.

§ 152, which permits union shop clauses notwithstanding state law to the contrary, the principle of *Hanson* applies to § 8(a)(3) of the National Labor Relations Act, 29 U.S.C. § 158(a)(3), even though the latter allows state right-to-work laws to take precedence over the NLRA's approval of union shop clauses. This difference in the effect of contrary state law does not change the congressional imprimatur placed on union shop clauses by both statutes.

In *Linscott v. Millers Falls Company*, 440 F.2d 14 (1st Cir.), *cert. denied*, 404 U.S. 872, 92 S.Ct. 77, 30 L.Ed.2d 116 (1971), the Court of Appeals for the First Circuit held that there was sufficient governmental action to support a first amendment challenge to a union security agreement entered into pursuant to the NLRA. That court held that the rule of *Hanson* applied:

> The majority of the court, however, while acknowledging that the present case may go a little further, finds insufficient basis for distinguishing *Railway Employees' Dep't v. Hanson*, 1956, 351 U.S. 225, 76 S.Ct. 714, 100 L.Ed. 1112.
>
> . . . .
>
> Defendants would distinguish *Hanson* because, unlike the Railway Labor Act, section 14(b) of the LMRA, 29 U.S.C. § 164(b), allows the state to outlaw union shop agreements. This misapprehends what *Hanson* basically decided. If federal support attaches to the union shop if and when two parties agree to it, it is the same support, once it attaches, even though the consent of the third party, the state, is a pre-condition. The means by which the agreement is attained does not affect the significant language in *Hanson*
>
> . . . .

*Linscott v. Millers Falls Company*, 440 F.2d 14, 16 (1st Cir. 1971).[7]

---

**6.** Although the amended complaint alleges that such expenditures would violate plaintiff's first amendment right to free speech and free association, I hold that plaintiff's right to free association cannot be violated by any of the expenditures here. Section 8(a)(3) and decisions interpreting it make it clear that plaintiff has no right not to belong to the union to the extent of paying dues and fees if he wishes to keep his present job. *See, e. g., Abood v. Detroit Board*

*of Education*, 431 U.S. 209, 225–226, 97 S.Ct. 1782, 1794, 52 L.Ed.2d 261 (1977); *Railway Employees' Dept. v. Hanson*, 351 U.S. 225, 76 S.Ct. 714, 100 L.Ed. 1112 (1956).

**7.** The Court of Appeals for the Tenth Circuit disagreed in *Reid v. McDonnell Douglas Corporation*, 443 F.2d 408 (1971), and concluded that governmental action under the NLRA in a chal-

I agree with the reasoning of *Linscott* in the absence of controlling precedent in this circuit and hold that a union shop agreement under the NLRA bears the imprimatur of federal law, and therefore, constitutes sufficient governmental action. *See Buckley v. American Federation of Television and Radio Artists*, 419 U.S. 1093, 95 S.Ct. 688, 42 L.Ed.2d 687 (1974) (dissent from denial of certiorari).[8]

2. THE NLRA DOES NOT AUTHORIZE EXPENDITURES OF DISSENTER'S DUES MONEY FOR PURPOSES OTHER THAN COLLECTIVE BARGAINING, CONTRACT ADMINISTRATION AND GRIEVANCE ADJUSTMENT

■ Plaintiff here is not challenging defendants' right to force him to be a member of defendant union to the extent of paying dues and fees. Rather, he claims that defendants may not spend his money to support political or ideological causes in which he does not believe.[9] There is no question but that to force plaintiff through a union shop clause to contribute money to the campaign of a political candidate in whom he did not believe would be a violation of plaintiff's first amendment right to free speech. Thus I hold that Congress did not intend § 8(a)(3) of the National Labor Relations Act to authorize this type of expenditure.

Although plaintiff nowhere advances this *ultra vires* ground for invalidating defendants' expenditures of his dues money, it is my obligation to avoid a constitutional holding if a lesser means can be used to reach the correct result. In particular, whenever the serious doubt is raised about the consti-tutionality of a statute, the court must "ascertain whether a construction of the statute is fairly possible by which the question may be avoided." *Crowell v. Benson*, 285 U.S. 22, 62, 52 S.Ct. 285, 296, 76 L.Ed. 598 (1932); *Antilles Surveys, Inc. v. DeJongh*, 358 F.2d 787, 790 (3d Cir.), *cert. denied*, 385 U.S. 900, 87 S.Ct. 206, 17 L.Ed.2d 132 (1966); *Carpenter v. Andrus*, 485 F.Supp. 320, 323 (D.Del.1980).

Section 8(a)(3) of the NLRA, because of its approval of union shop clauses, is one of the means by which a union can force a worker to belong to a union against his wishes. Any interpretation of that provision which permits it to be used as a tool to force a person to support political candidates and ideological causes against his will would make the provision unconstitutional as applied. This is clearly not within Congress's intent in promulgating the union shop provision.

The Supreme Court has twice held that a union shop clause under the 1951 Amendments to the Railway Labor Act, 45 U.S.C. § 152 (Eleventh), does not give a union the right to spend a dissenter's money for political causes. *Brotherhood of Railway and Steamship Clerks v. Allen*, 373 U.S. 113, 83 S.Ct. 1158, 10 L.Ed.2d 235 (1963); *International Association of Machinists v. Street*, 367 U.S. 740, 81 S.Ct. 1784, 6 L.Ed.2d 1141 (1961). In both cases, the Court decided that the Railway Labor Act proscribed such expenditures and did not reach the constitutional issue. The defendant in the case at bar argues that *Street* and *Allen* should not apply here because the Railway Labor Act union shop provision affirmatively permits union shop clauses notwithstanding state right-to-work laws, while the NLRA per-

---

lenge to a union shop clause was insufficient to establish jurisdiction.

**8.** That opinion stated, in pertinent part:

When Congress authorizes an employer and a union to enter into union-shop agreements and makes such agreements binding and enforceable over the dissents of a minority of employees or union members, it has cast the weight of the Federal Government behind the agreements just as surely as if it had imposed them by statute.

*Id.* at 1094–95, 95 S.Ct. at 688.

**9.** Plaintiff's amended complaint only states that his money is being used for purposes other than "collective bargaining, contract administration and grievance adjustment." However, for the reasons discussed in Part III(A) of this Memorandum, a specific objection to political or ideological expenditures may be implied from this general language.

mits union shop clauses only with state concurrence. However, an authorization which is subject to a third party's approval is still an authorization. I therefore do not agree that this difference between the two labor statutes compels me to narrow the Supreme Court's holdings to apply only to the former. At least one appellate court has agreed that Congress intended to allow the same kind of union security agreement under both the Railway Labor Act and the NLRA, and so applied the logic of *Street* and *Allen* in a case decided under the NLRA.

> A provision in the collective bargaining agreement *authorizing* the expenditure of agency fees for political uses would immediately run afoul of the congressional intent delineated in *Street* and the express holding in both *Street* and *Allen*.

*Seay v. McDonnell Douglas Corp.,* 427 F.2d 996, 1000–01 (9th Cir. 1970) (footnote omitted). *See* Haggard, *Compulsory Unionism, the NLRB, and the Courts; A Legal Analysis of Union Security Agreements* (1977) p. 132–137.

The Supreme Court itself held that an *agency* shop clause authorized by a state law similar to the NLRA could not be used to force a public employee's financial support for political causes. *Abood v. Detroit Board of Education,* 431 U.S. 209, 234, 97 S.Ct. 1782, 1799, 52 L.Ed.2d 261 (1977). An agency shop is not functionally different from a union shop. *NLRB v. General Motors Corp.,* 373 U.S. 734, 744, 83 S.Ct. 1453, 1460, 10 L.Ed.2d 670 (1963); GORMAN, LABOR LAW 644–645 (1976). Therefore, the Supreme Court's reasoning in *Abood* holds with equal force here:

> [Plaintiffs] specifically argue that they may constitutionally prevent the Union's spending a part of their required service fees to contribute to political candidates and to express political views unrelated to its duties as exclusive bargaining representative. We have concluded that this argument is a meritorious one.

431 U.S. at 234, 97 S.Ct. at 1799.

A difference between the *Abood* case and the case at bar is that in *Abood* the Supreme Court did not have statutory interpretation available as a ground of decision and so had to reach the constitutional claim. This is because the state supreme court had already interpreted the state law authorizing agency shop clauses as permitting the contested expenditures, and this interpretation was definitive. I can avoid the constitutional claim in the case at bar. Therefore, applying the principle in *Abood* here, I decide that the NLRA condemns the expenditure of dissenters' money for ideological or political purposes. Congress presumptively did not intend to legitimate the types of expenditures outlawed by the Supreme Court in *Abood*.

Although plaintiff here has not objected specifically to political expenditures, this objection is encompassed by inference within his pleaded objection to expenditures for purposes other than "collective bargaining, contract administration and grievance adjustment."[10] However, some courts proscribe more types of expenditures than others. *E. g., Beck v. Communications Workers of America,* B.N.A. Daily Labor Report No. 166 (Aug. 25, 1980) (special master held that eighty-one percent of dues were spent for noncollective bargaining activities and so had to be refunded).

I will not now decide specifically what expenditures must be refunded to a dissenter. This must await a full factual development.

### ORDER

AND NOW, this 19th day of December, 1980, IT IS ORDERED that:

1. Plaintiff shall amend his complaint to plead jurisdiction in accordance with the accompanying memorandum within twenty days or his complaint will be dismissed.

2. Defendants' motion for summary judgment is DENIED.

---

10. I will not require more specific pleading of plaintiff's objections for the reasons discussed in Part III(A) of this memorandum.

3. Defendants shall respond within fifteen days of the date of this Order to plaintiff's motion to compel answers to interrogatories and motion to compel production of documents.

4. A pretrial conference is scheduled for Monday, January 5, 1981, at 9:15 a. m., Room 3809 United States Courthouse, Philadelphia, Pa.

5. All discovery shall be completed by February 15, 1981.

6. This case is placed on the March 1981 trial list.

ORDER AMENDING MEMORANDUM

AND NOW, this 6th day of January, 1981, IT IS ORDERED that:

1. Part I of the Memorandum dated December 19, 1980, is stricken in its entirety to reflect the elimination of the amount in controversy requirement from 28 U.S.C. § 1331 by the Federal Question Jurisdictional Amendments Act of 1980, P.L.No.98–486, approved by the President on December 1, 1980.

2. Because the court has jurisdiction under 28 U.S.C. § 1337(a) in any event, plaintiff need not further amend its complaint to plead that jurisdiction exists under § 1331 as well.