**RINGLING BROS.–BARNUM & BAILEY COMBINED SHOWS, INC., Plaintiff–Appellee,**

v.

**CELOZZI–ETTELSON CHEVROLET, INC., Defendant–Appellant.**

No. 87–2643.

United States Court of Appeals, Seventh Circuit.

Argued March 29, 1988.

Decided Aug. 25, 1988.

Marvin N. Benn, Hamman & Benn, Chicago, Ill., for defendant-appellant.

Steven B. Pokotilow, Blum Kaplan, New York City, for plaintiff-appellee.

Before CUMMINGS, FLAUM and EASTERBROOK, Circuit Judges.

CUMMINGS, Circuit Judge.

Ringling Bros.–Barnum & Bailey Combined Shows, Inc., owners of the trademark "The Greatest Show on Earth," obtained a preliminary injunction prohibiting Celozzi–Ettelson Chevrolet, Inc., an Illinois car dealership, from using the slogan "The Greatest Used Car Show on Earth." On appeal, Celozzi–Ettelson challenges the injunction as improper under the Illinois Anti–Dilution Act, challenges the Anti–Dilution Act as preempted by federal trademark law, and challenges the district court's finding that Ringling Bros. would suffer irreparable harm if a preliminary injunction was not issued.[1] We reject each of Celozzi–Ettelson's challenges and affirm.

## I

Ringling Bros. circus owns the trademark "The Greatest Show on Earth." The district court found that although originally this mark was primarily descriptive and weak, through continued use[2] it has become a celebrated and famous mark that the public associates with the circus. Annually, approximately 10 million people in 80 cities in 48 states attend performances of "The Greatest Show on Earth." To attract an audience of 10 million people, in 1987 Ringling Bros. spent in excess of 10 million dollars heavily promoting "The Greatest Show on Earth" through a variety of techniques including print, radio and television advertisements, outdoor billboards, direct mail and souvenirs. In addition, prior to circus performances in major cities, Ringling Bros. often enters into joint promotions with local companies in which Ringling Bros. provides circus tickets to retailers who in turn pay for print advertisements that feature their service in association with "The Greatest Show on Earth" and offer the retailers' customers free tickets to the circus. In October 1985, Ringling Bros. entered into such a joint promotion with Hanley Dawson Automobile Dealership in Chicago.

To protect the strength of the mark it spends so much money carefully cultivating, Ringling Bros. engages in an aggressive enforcement program. When it becomes aware of the use of a slogan similar to "The Greatest Show on Earth,"[3] it notifies the potential infringer of Ringling Bros.' ownership of the mark and requests that it refrain from its use of the slogan. In virtually every instance, parties whose slogan is challenged by Ringling Bros. as potentially infringing acquiesce and cease using the mark; some even apologize publicly or print retractions. The exception is defendant Celozzi–Ettelson.

Celozzi–Ettelson, located in Elmhurst, Illinois, is a car dealership that sells both new and used cars, ranking first in Illinois in the number of used cars sold and second nationally in the number of new Chevrolet cars sold. In June 1985, it erected two signs on its showroom roof that in big, bold, red circus-style letters proclaimed Celozzi–Ettelson "The Greatest Used Car Show on Earth." Beginning in mid–1986, these signs were also visible in a television advertisement for Celozzi–Ettelson that included a view of the premises. The advertisement aired on Channel 32, WFLD, in Chicago, Illinois. WFLD's broadcast sig-

---

1. Only Count III of the complaint, which asserts a claim of trademark dilution under Illinois law, is before us. Jurisdiction is based on diversity of citizenship.

2. Although the trademark was granted relatively recently, in 1961, Ringling Bros. claims a date of first use in 1891 and a date of first use in interstate commerce in 1907.

3. The slogans challenged by Ringling Bros. as potentially infringing altered its mark, "The Greatest Show on Earth," in several ways. Some replaced the noun "Show"—"The Greatest Vacation Values on Earth," "The Greatest Store on Earth" and "The Greatest Space on Earth." Some replaced the word "Earth"—"The Greatest Show on Ice" and "The Greatest Show on Tape." At least one replaced the preposition "on"—"The Greatest Show Under Earth" (advertising caverns). Finally, some, like Celozzi–Ettelson, took the entire slogan and modified "Show" with their product—"The Greatest _____ Show on Earth," filling in the blank with Used Car, Consumer Electronics, Orchid, Fur, Software, Jewelry, Pizza or Horse.

nal covers the area within a 67–mile radius of Chicago.

When Ringling Bros. became aware of Celozzi–Ettelson's use of the phrase "The Greatest Used Car Show on Earth," Ringling Bros. wrote Celozzi–Ettelson demanding that it immediately cease all further use of the phrase. Celozzi–Ettelson refused to comply and Ringling Bros. filed a motion for a preliminary injunction. The district court granted the motion on the ground that Celozzi–Ettelson's use of the phrase violated the Illinois Anti–Dilution Act.

## II

■ The Illinois Anti–Dilution Act permits the owner of a mark to obtain an injunction enjoining the use by another of a similar mark "if there exists a likelihood ... of dilution of the distinctive quality of the mark, ... notwithstanding the absence of competition between the parties or of confusion as to the source of goods or services." Ill.Rev.Stat. ch. 140, § 22. The injunctive relief provided by the Act grants protection to trademarks beyond that provided by the classic "likelihood of confusion" test under the Lanham Act. 15 U.S. C. § 1051 *et seq.* The additional protection prevents the gradual whittling away of trademarks' distinctiveness through use by third parties on non-confusing, non-competing products.

Under the Illinois Act, "an injunction *must* be granted if the prior user can show that the mark is distinctive and that the subsequent user's use dilutes that distinctiveness." *Hyatt Corp. v. Hyatt Legal Services*, 736 F.2d 1153, 1157 (7th Cir.1984), certiorari denied, 469 U.S. 1019, 105 S.Ct. 434, 83 L.Ed.2d 361 (emphasis added). To reverse the injunction, Celozzi–Ettelson presents several overlapping arguments challenging the district court's factual finding that "The Greatest Show on Earth" is a distinctive mark and that it is so similar to Celozzi–Ettelson's slogan that it will be diluted.

Most of Celozzi–Ettelson's arguments flow from the assertion that Ringling Bros. is attempting to go beyond its mark and monopolize common laudatory phrases such as "The Greatest ... on Earth," "The Greatest Show ...," and "The ... Show on Earth." Although Ringling Bros. has successfully prevented the use of these phrases, see *supra* note 3, as the district court recognized, the monopolization claim is a straw man here. Celozzi–Ettelson did not use one of the variants it claims Ringling Bros. is trying to monopolize; it used the entire mark and inserted the words "Used Car."

Celozzi–Ettelson's argument is similar to that made by the defendant in *Chemical Corp. of America v. Anheuser–Busch, Inc.*, 306 F.2d 433 (5th Cir.1962), certiorari denied, 372 U.S. 965, 83 S.Ct. 1089, 10 L.Ed.2d 129 (interpreting the Florida anti-dilution statute), and it fails for the same reason. In *Chemical Corp.*, Anheuser–Busch, owners of the slogan "Where there's life ... there's Bud," successfully enjoined Chemical Corp., the makers of a combination floor-wax insecticide, from using the slogan "Where there's life ... there's bugs." Chemical Corp. argued that Anheuser–Busch was trying to preempt for itself the exclusive use of any slogan containing the words "Where there's life." The court rejected this argument because Chemical Corp.'s slogan did not merely use the words "Where there's life," but was deceptively similar to the entire Budweiser slogan. Therefore the court concluded that any protection afforded to the full slogan would not result in the appropriation of the words "Where there's life" in combination with all other words. *Id.* at 436.

In the same manner, Celozzi–Ettelson's slogan is deceptively similar to Ringling Bros.' entire mark. As noted above, the car dealer did not merely use the words "The Greatest Used Cars" or "The Greatest Used Cars on Earth;" it used "The Greatest [Used Car] Show on Earth." Any dissimilarity caused by the insertion of the words "Used Car" is countered by the fact that Celozzi–Ettelson presented its slogan in a manner designed to evoke the circus, using big, bold, red circus-style lettering. Protecting Ringling Bros.' distinctive mark from the dilution that would result from

Celozzi–Ettelson's similar slogan will not grant Ringling Bros. a monopoly over other common laudatory phrases.

Celozzi–Ettelson also argues that the mark is not distinctive because it is composed of a widely used phrase rather than a coined word such as "Polaroid." The fact that a mark is coined or invented may make distinctiveness easier to show, *Hyatt*, 736 F.2d at 1157, but it is neither necessary nor sufficient to establish distinctiveness. *Id.;* see, *e.g., Exxon Corp. v. Exxene Corp.,* 696 F.2d 544 (7th Cir.1983) (coined word not enough to prevail on dilution claim when reasonable jury could have found two coined words, Exxon and Exxene, dissimilar). The length of time the mark has been used, the scope of advertising and promotions, the nature and extent of the business and the scope of the first user's reputation are also important factors that must be considered in determining the distinctiveness of a mark. *Hyatt*, 736 F.2d at 1158.

Looking at the relevant factors, we see that "The Greatest Show on Earth" has been used by Ringling Bros. for almost 100 years; that $10 million is spent annually advertising "The Greatest Show on Earth" throughout the country and approximately $50 million in revenue is derived from services rendered under the mark; and that the scope of Ringling Bros.' reputation as "The Greatest Show on Earth" is nationwide. Thus the district court clearly did not abuse its discretion when it determined that the mark "The Greatest Show on Earth," although not coined, is nevertheless distinctive.

Celozzi–Ettelson also makes the unique argument that "distinctive" means something different under the Anti–Dilution Act than it does under the Lanham Act. However, even if Celozzi–Ettelson had cited some authority in support of this argument, we would have no reason to evaluate its dubious merit because the district court applied the definition of "distinctive" used by this Court in *Hyatt* to evaluate a claim under the Anti–Dilution Act. See 736 F.2d at 1158. The district court's discussion followed the factors establishing distinctiveness outlined in *Hyatt* and noted the parallels between the two cases. Therefore, even if two different definitions did exist, no error occurred because the district court would have relied on the correct one.

### III

Celozzi–Ettelson makes another argument, without citation to authority, whose merits we need not reach. This argument is that the fair use defense of the Lanham Act, 15 U.S.C. § 1115(b)(4), preempts the Illinois Anti–Dilution Act. Section 1115(b)(4) provides a defense to an action that would otherwise constitute trademark infringement if the mark is used fairly and in good faith only to describe the goods or services or their geographic origin. Celozzi–Ettelson argues that the Anti–Dilution Act cannot be used to circumvent this exception to the federal trademark laws. Specifically, defendant contends that its use of the slogan "The Greatest Used Car Show on Earth" is laudatory and descriptive and was adopted in good faith and is thus a fair use under the Lanham Act. Thus Celozzi–Ettelson claims it has a defense to an infringement action that preempts application of the Illinois Anti–Dilution Act.

But no direct conflict exists between the Lanham Act and the Anti–Dilution Act, and, in the absence of a direct conflict, we have no reason to assume from the congressional silence that Congress intended to preempt state anti-dilution statutes. See generally, Note, *Unfair Competition and Federal Law: Constitutional Restraints on the Scope of State Law,* 54 U.Chi.L. Rev. 1411, 1432–1436 (1987); Gilson, *Trademark Protection and Practice,* § 5.05[9]; but see, *United States Jaycees v. Commodities Magazines, Inc.,* 661 F.Supp. 1360, 1365–1368 (N.D.Iowa 1987) (holding that the Lanham Act preempts application of the Iowa Dilution statute). Moreover, even if we held that the Lanham Act's fair use defense preempted the Anti–Dilution Act, such a holding would not result in a reversal of the district court because Celozzi–Ettelson has no fair use defense.

■ The fair use defense requires good faith and here there is a factual finding to the contrary. Celozzi–Ettelson states that the slogan "The Greatest Used Car Show on Earth" was suggested at a meeting of its owners and general manager, without discussion or consideration of Ringling Bros.' slogan. However, in a factual finding adopted by the district court, the magistrate stated that he did not credit the testimony of Celozzi–Ettelson's witness that it was unaware of Ringling Bros.' mark when it adopted its slogan "The Greatest Used Car Show on Earth." We concur in the finding that defendant did not act in good faith when it adopted its slogan.

The fair use defense in the Lanham Act also requires that the use merely describe the goods or services offered. Although there is no factual finding directly on this point, the factual findings regarding Celozzi–Ettelson's business indicate that it is in the business of selling cars, not presenting entertainment. If Celozzi–Ettelson had used the slogan "The Greatest Used Car Showroom on Earth" it might have had a plausible argument that its slogan was laudatory and descriptive; but it used the word "Show," not "Showroom," and, unlike the circus, the used car business is not literally a show. The slogan is therefore not descriptive of the cars it sells or the retail services it offers. Celozzi–Ettelson has no fair use defense to an infringment action, and thus no basis for a reversal under a preemption theory.

## IV

Celozzi–Ettelson's final argument challenges the district court's finding that Ringling Bros. would suffer irreparable harm if the preliminary injunction did not issue.[4] The thrust of Celozzi–Ettelson's argument is that because there is no finding of likelihood of confusion, Ringling Bros.' reputation cannot be tarnished and its mark cannot be blurred. While acknowledging that a likelihood of confusion is not a requisite for a finding of dilution, Celozzi–Ettelson nevertheless concludes that without a likelihood of confusion Ringling Bros. can suffer no legal damages from defendant's use of the phrase "The Greatest Used Car Show on Earth."

Cellozzi–Ettelson's argument is based on a misconstruction of the Anti–Dilution Act. First, it is nonsensical to argue that although a likelihood of confusion is not necessary to establish the existence of dilution, it is necessary to obtain an injunction preventing further dilution. Second, the underlying premise of the anti-dilution doctrine is that unlike the immediate, and often measurable, injury caused by confusion, "dilution is an infection which, if allowed to spread, will inevitably destroy the advertising value of the mark." *Polaroid Corp. v. Polaraid Inc.,* 319 F.2d 830, 836 (7th Cir.1963). Thus the very nature of dilution, insidiously gnawing away at the value of a mark, makes the injury "remarkably difficult to convert into damages." *Hyatt,* 736 F.2d at 1158. The lack of confusion that Celozzi–Ettelson argues as a factor negating damages is actually a factor establishing the unquantifiable, and thus irreparable, nature of the injury. Without a likelihood of confusion there is no effective way to measure the loss of audience or potential growth—to identify the specific persons who do not attend the circus or to ascertain the businesses that do not enter into joint promotions—because of Celozzi–Ettelson's use of the slogan "The Greatest Used Car Show on Earth." See *Hyatt,* 736 F.2d at 1158; *Instrumentalist Co. v. Marine Corps League,* 509

---

4. We recognize that consideration of the factors generally required to obtain a preliminary injunction may not be necessary under the Illinois Anti–Dilution Act. The Act states that the "court *shall* grant injunctions ... if there exists a likelihood of ... dilution of the distinctive quality of the mark." Ill.Rev.Stat. ch. 140 § 22 (emphasis added). The language of the statute suggests that the trial court's usual discretion is limited and that the only requirement is a finding of likelihood of dilution. See *Instrumentalist Co. v. Marine Corps League,* 509 F.Supp. 323, 333 n. 17 (N.D.Ill.1981), affirmed, 694 F.2d 145 (7th Cir.1982). Since neither party presents this argument, our affirmance does not disturb the irreparable harm standard applied by the district court.

F.Supp. 323, 333 (N.D.Ill.1981), affirmed, 694 F.2d 145 (7th Cir.1982).

Finally, by its nature, the injury caused by dilution will almost always be irreparable. The harm caused by dilution is, for example, that the distinctiveness of the name "Polaroid" and the favorable association that accrued to it by virtue of Polaroid's commercial success would be undermined by the use of similar names in connection with other non-competing and non-confusing products. With other uses, the word "Polaroid" would no longer immediately call to mind the highly regarded cameras made by the Polaroid Corporation. The mental image would be blurred, at least to anyone who had dealt with the other products or seen their advertising. "It is the same dissonance that would be produced by selling cat food under the name 'Romanoff,' or baby carriages under the name 'Aston Martin,' " *Exxon Corp. v. Exxene Corp.*, 696 F.2d 544, 550 (7th Cir.1983) (commenting on the first application of the Anti–Dilution Act by this Court in *Polaroid Corp. v. Polaroid Inc.*, 319 F.2d 830 (7th Cir.1963)). This dissonance constitutes irreparable harm that cannot be measured and can only be prevented through an injunction. The district court correctly determined that Celozzi–Ettelson's use of the slogan "The Greatest Used Car Show on Earth" would blur the strong association the public now has between Ringling Bros.' mark and its circus and thus inflict irreparable harm.

## V

Because we uphold the imposition of the preliminary injunction under the Anti–Dilution Act, we do not address Ringling Bros.' argument that the preliminary injunction was also warranted on the grounds that Celozzi–Ettelson's conduct constitutes trademark infringement and unfair competition under the Lanham Act. The judgment of the district court is AFFIRMED.