**SUNMARK, INC., Plaintiff–Appellant,**

v.

**OCEAN SPRAY CRANBERRIES, INC., Defendant–Appellee.**

No. 95–1017.

United States Court of Appeals, Seventh Circuit.

Argued May 11, 1995.

Decided Aug. 29, 1995.

George W. Hamman, Marvin Benn, Dawn M. Cassie (argued), Hamman & Benn, Chicago, IL, for plaintiff-appellant.

Lynn A. Tannehill, John W. Kozak, Leydig, Voit & Mayer, Chicago, IL, David H.T. Kane (argued), Siegrun D. Kane, Kathleen E. McCarthy, Chrystal A. LeRoy, Kane, Dalsimer, Sullivan, Kurucz, Levy, Eisele & Richard, New York City, for defendant-appellee.

Before BAUER, WOOD, Jr., and EASTERBROOK, Circuit Judges.

EASTERBROOK, Circuit Judge.

Sunmark produces *Swee* TARTS, a popular fruit-flavored sugar candy most often sold in a tablet form similar to a brightly colored aspirin. Ocean Spray Cranberries produces a variety of sugar-flavored cranberry juice drinks that they often advertise as tasting sweet and tart—or "sweet-tart." For want of a conjunction, Sunmark prays for an injunction; unhappy with the hyphenated version of the description, it has sued under the Lanham Act and the Illinois Anti–Dilution Act. After a three-day evidentiary hearing, a magistrate judge disparaged Sunmark's chances of prevailing on the merits. 1994 U.S.Dist. LEXIS 15186 (N.D.Ill.). The district judge delivered a brief oral opinion that essentially adopted the magistrate judge's report, and he refused to grant a preliminary injunction.

Since 1963 *Swee* TARTS candy has been sold with this logo:

The "Swee" is rendered in bright blue, the "ARTS" in magenta; the "T" in the middle is divided between the two colors.

Ocean Spray has advertised its juices as "sweet-tart" sporadically since 1942. The two campaigns with the most media exposure drew objections from Sunmark or one of its predecessors (collectively Sunmark). A 1973 television commercial for Ocean Spray cranapple juice featured a Mounty and a maiden singing "Sweet–Tart" to the tune of "Sweetheart, Sweetheart, Sweetheart". Sunmark asked Ocean Spray to discontinue use of "sweet-tart." (The record does not reveal whether Nelson Eddy or the Royal Canadian Mounted Police registered a complaint. Now that the Mounties have appointed Disney as a marketing agent, Ocean Spray has more than Sunmark to be concerned about.) Ocean Spray responded that it saw no reason to quit using words it viewed as descriptive, and it continued running the commercials until the end of the campaign several months later. While it continued to use "sweet-tart" in newspaper advertising from time to time, Ocean Spray did not again use the term in any broadcast advertising until 1991.

That year Ocean Spray decided to distinguish its cranberry products from other juice drinks by making "sweet-tart" the centerpiece of its advertising. Television commercials featured actors' faces saying "sweet-tart"—sometimes with a pause, sometimes without—over a background jingle while the two words were superimposed on the screen. Sometimes color blocks surrounded the letters in sweet and tart, sometimes not. Sometimes the words were rendered in block letters, and sometimes tart was in oblique letters. The phrases "A Sweet Tart of a Deal", "Sweet–Tart Savings", and "Get the Sweet–Tart Taste of Ocean Spray" appeared in newspaper coupons. For two years, Sunmark and its predecessors negotiated with Ocean Spray. Unwilling to accept the (minor) concessions Ocean Spray offered, Sunmark sued in 1993 under the Lanham Act and the Illinois Anti–Dilution Act.

■ The initial question is whether Ocean Spray used Sunmark's mark at all. If it employed the words "sweet" and "tart" simply as descriptions, and "otherwise than as a mark," it didn't, and there can be no violation of the Lanham Act under what is known as the fair use defense. 15 U.S.C. § 1115(b)(4); *Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 951–54 (7th Cir.1992). This is a factual question, and therefore our review of the district court's findings is deferential. *August Storck K.G. v. Nabisco, Inc.*, 59 F.3d 616 (7th Cir.1995); *Scandia Down Corp. v. Euroquilt, Inc.*, 772 F.2d 1423, 1428 (7th Cir.1985). Section 1115(b)(4) also requires that the use be in good faith; Sunmark does not seriously dispute the district court's finding that Ocean Spray did not act in bad faith.

■ The district court found the words sweet and tart, and their conjunction, to be descriptive, although it acknowledged that the *Swee* TARTS logo cannot be called descriptive. Sunmark objects strenuously, arguing that sweet-tart is an oxymoron and therefore cannot be descriptive. Although an earlier litigation called the predecessor "Sweetarts" mark "uncommon, arbitrary, and distinct", *Sweetarts v. Sunline, Inc.*, 380 F.2d 923, 927 (8th Cir.1967), the question in this litigation is not whether "sweet-tart" or the

*Swee* TARTS logo is an arbitrary mark when used to describe Sunmark's candy—or, as in the eighth circuit's case, an entire corporation that sold many items including products not normally thought of as tart, like butter toffees and mixed chocolates. Instead the question is whether Ocean Spray has used "sweet-tart" descriptively, for a drink that has elements of both sweetness (it is sugared) and tartness (it is based on cranberries). Both sweet and tart are words of description in ordinary English, quite unlike words such as "Exxon" or "Kodak."

■ Under the Lanham Act it is irrelevant whether the *Swee* TARTS mark is itself descriptive, and the district court did not need to pursue the question. The potential descriptive nature of "sweet-tart" does not divest Sunmark of any rights to protect its mark "*Swee* TARTS", for that mark is incontestable under 15 U.S.C. § 1065. "*Swee* TARTS" is no longer subject to challenge with respect to the products to which it applies, whether or not the mark is descriptive. *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 105 S.Ct. 658, 83 L.Ed.2d 582 (1985). Ocean Spray is not contesting the validity of the trademark; it was invoking its right to use a descriptive phrase *as a* descriptive phrase under § 1115(b)(4), and *Park 'N Fly* is no barrier to this usage. *Institute for Scientific Information, Inc. v. Gordon & Breach Science Publishers, Inc.*, 931 F.2d 1002, 1010 (3d Cir.1991).

That *Swee* TARTS is an incontestable mark for sugar candy does not make Sunmark the gatekeeper of these words for the whole food industry. Cf. *Qualitex Co. v. Jacobson Products Co.*, —— U.S. ——, 115 S.Ct. 1300, 131 L.Ed.2d 248 (1995) (by adopting gold-green as a trademark color for press pads, a vendor cannot claim exclusive use of this color throughout commerce). Consider what would happen if a farm started selling apples under the FLUFFY APPLE mark. "Fluffy" is a fanciful description of an apple. Let us suppose it became well known, even incontestable, and that no one else could apply the word "fluffy" to an apple, or even to an orange. Would the vendor then be able to stop General Mills from advertising that you can make fluffy cakes from its batter? (We

won't pursue the question whether, when introducing the Macintosh computer, Apple Computer needed the permission of anyone other than McIntosh Laboratories, a maker of electronic gear.)

■ The question under § 1115(b)(4) is whether "sweet-tart" is descriptive *as Ocean Spray uses it*. "Sweet" is adjectival. "Tart" is adjectival. Sunmark concedes that "sweet and tart" is descriptive. The district court found that "sweet-tart" meets the bill as well, at least for a product having both attributes. For a word or mark to be considered descriptive it merely needs to refer to a characteristic of the product. *Sands, Taylor & Wood,* 978 F.2d at 952. The eighth circuit put a great deal of weight on the fact that "sweet-tart" is not in the dictionary. Language often outpaces dictionaries; phrases such as "sports drink," cf. *PepsiCo, Inc. v. Redmond,* 54 F.3d 1262 (7th Cir.1995), and "hard drive" could not be found in a 1967 dictionary, but we would not be under an obligation to consider them arbitrary today. In 1990, a full year before Ocean Spray began the advertising campaign that Sunmark complains of here, eight *New York Times* writers used the phrase "sweet-tart" in eleven articles. In comparison, only three 1990 *New York Times* stories used the adjective "chocolatey", which does appear in the dictionary, and only one *New York Times* story in 1990 referred to the candy *Swee-Tarts*.

■ Is there anything more to the Lanham Act inquiry? "The use of a similar name by another to truthfully describe his own product does not constitute a legal or moral wrong, even if its effect be to cause the public to mistake the origin of the product." *William R. Warner & Co. v. Eli Lilly & Co.,* 265 U.S. 526, 528, 44 S.Ct. 615, 616, 68 L.Ed. 1161 (1924). True, a number of courts have implied that confusion is inconsistent with a fair use defense. *Transgo, Inc. v. Ajac Transmission Parts Corp.,* 911 F.2d 363, 366 n. 2 (9th Cir.1990); *Zatarains, Inc. v. Oak Grove Smokehouse, Inc.,* 698 F.2d 786, 791 (5th Cir.1983); *Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.,* 604 F.2d 200, 206 n. 9 (2d Cir.1979). But none of these cases acknowledges *William R. War-*

*ner* or asks how an accurate description can be objectionable. At all events, none of these cases dealt with unrelated products. *Zatarains,* for example, involved two products for frying fish, one with the mark Fish-Fri, the other identified as a "fish fry". When the products involved are similar, "likelihood of confusion" may amount to using a word in a "misleading" way, violating 15 U.S.C. § 1125(a)(1)—not because the likelihood of confusion makes the use nondescriptive, but because the confusion about the product's source shows that the words are being used, de facto, as a mark. And the defense is available only to one who uses the words of description "otherwise than as a mark".

■ After concluding that Ocean Spray used "sweet-tart" descriptively, the district court remarked in passing that Ocean Spray used the words as a trademark, particularly in the "sweet-tart of a deal" ads. If so, Ocean Spray cannot invoke the fair use defense. We have some difficulty understanding how Ocean Spray can be said to use the words "sweet-tart" as a way of identifying the origin of its product, an essential ingredient of usage as a trademark. See *Sands, Taylor & Wood,* 978 F.2d at 953. It has not laid claim to exclusivity and could not object if other juice producers used the phrase (provided, of course, that it accurately described the competing product). The "sweet-tart of a deal" language strikes us as a play on words, a device that does not identify the goods' origin and that anyone may use. The homophone ("sweet-tart of a deal" = "sweetheart of a deal") works only because the phrase "sweet-tart" describes the product, so we have a descriptive use after all. Although descriptiveness does not make status as a trademark impossible, *ibid.*, the possibility that after full proceedings the trier of fact will disqualify Ocean Spray's employment of "sweet-tart" from the fair use defense by calling it a trademark is too remote to support a preliminary injunction—certainly not given that candy and fruit juice are different products, making it conceivable that the phrase could be used as a trademark on each without infringing the other proprietor's rights.

We bypass all concerns about product extensions. Sunmark worries that Ocean Spray will use "sweet-tart" in selling its new line of candies, creating a clash within the domain of its own trademark. It also wonders whether, if it expands into fruit juices, it will be able to employ "sweet-tart" despite Ocean Spray's senior use (if that phrase is indeed a trademark in the juice business). Cf. *Safeway Stores, Inc. v. Safeway Quality Foods, Inc.*, 433 F.2d 99 (7th Cir.1970); *Burger King of Florida, Inc. v. Hoots,* 403 F.2d 904 (7th Cir.1968). Sunmark believes that the district court's disposition handicaps its position if the parties come to blows about these new products. Yet the district court's short oral remarks are hardly dispositive on these issues. If after this opinion Sunmark presses ahead with its demand for permanent injunctive relief, the district court's conclusions after having more exposure to these products may differ. It is enough for now to observe that Ocean Spray currently advertises Ocean Spray Fruit Waves (its new candy) as "tart and sweet", which Sunmark does not find objectionable. If Ocean Spray were to advertise its candy as "sweet-tart"—or if there were evidence, which the record does not contain, that consumers have become confused about the source of Ocean Spray Fruit Waves—Sunmark would have a strong claim for relief. Similarly, if and when *Swee* Tarts becomes the appellation of a fruit juice drink, either party may seek adjudication of the other's rights to use "sweet-tart" in the same line of goods. Any judicial venture into the subject without a concrete dispute would yield an advisory opinion.

 Even if we assume that some of the ways Ocean Spray deployed "sweet-tart" to sell juices have the status of a trademark, Sunmark cannot prevail without demonstrating a likelihood of confusion. The district court found that Sunmark had not carried its burden on this subject. Likelihood of confusion in a trademark case is a factual issue; again, appellate review is deferential. *August Storck,* 59 F.3d at 618–19. The magistrate judge considered the evidence and concluded that Sunmark had not demonstrated a likelihood of confusion; the district judge agreed. We do not think this conclusion clearly erroneous. The whole of the evidence presented in the district court came from Ocean Spray's marketing surveys: three of the 257 people shown one of the actual commercials (or a mock-up of it) reported that "sweet-tart" in the commercial referred to the candy. (Interestingly enough, these three found this a reason to *dislike* the commercial, indicating that Ocean Spray has a market incentive not to associate its product with *Swee* Tarts.) Three of 257 is not much confusion; indeed, it is remarkably low given the normal state of human comprehension of advertising and corporate organization. Compare *Indianapolis Colts, Inc. v. Metropolitan Baltimore Football Club Limited Partnership,* 34 F.3d 410, 415–16 (7th Cir. 1994).

We wouldn't put great weight on this survey if Ocean Spray had been the one to emphasize it, since it was a test of the effectiveness of the advertising on consumers rather than the customary survey in trademark cases showing the packaging or product to consumers and asking: "Who makes this?" or "Are these two products made by the same firm?" But the Ocean Spray survey was the only evidence of confusion that Sunmark presented. That is weak support for a preliminary injunction when Sunmark had three years to obtain better data—if any were obtainable. Perhaps the advertising is confusing after all. It may be that Sunmark can present more evidence, and that after a trial the record will support Sunmark's claims; the current record does not.

 The Illinois anti-dilution statute, 765 ILCS 1035/15, provides additional protection: it applies to products in other lines of commerce even if the trademark proprietor cannot show actual confusion. To prevail under this statute, however, the trademark proprietor must establish a "likelihood of injury to business reputation or of dilution of the distinctive quality of the mark". The statute protects only strong, distinctive marks with widespread recognition. *Kern v. WKQX Radio,* 175 Ill.App.3d 624, 634, 125 Ill.Dec. 73, 80, 529 N.E.2d 1149, 1156 (1st Dist.1988); *Ringling Bros.–Barnum & Bailey v. Celozzi–Ettelson Chevrolet, Inc.,* 855 F.2d 480, 482–83 (7th Cir.1988). It does not

operate to forbid the use of *every* wording similar to the offended mark. *Hyatt Corp. v. Hyatt Legal Services,* 736 F.2d 1153, 1159 (7th Cir.1984). Because "sweet-tart" can be used as words of description, Sunmark must show a secondary meaning to receive protection under the Illinois anti-dilution statute. *Kern,* 175 Ill.App.3d at 633–34, 125 Ill.Dec. at 79–80, 529 N.E.2d at 1155–56. Sunmark's only attempt to demonstrate a secondary meaning was based on promotional items bearing the name of the candy. This does not show secondary meaning—for meaning is in the mind of the beholder. Consumers' perceptions, not producers' promotions, determine whether a mark has secondary meaning. No evidence in this record implies that the adjective "sweet-tart" is to consumers evocative of the *Swee* TARTS candy. It was not clearly erroneous for the district court to find that Sunmark had not carried its burden of showing a secondary meaning capable of being diluted. Unlike the auto dealer trumpeting "Greatest Used Car Show On Earth" with circus-style lettering in *Celozzi–Ettelson,* Ocean Spray was not taking a free ride on a phrase given prominence and meaning by others, and on this record its advertising campaign cannot be said to have cheapened the *Swee* TARTS mark.

Having canvassed all of this, we need not get into additional questions such as irreparable injury and the balance of harms from errors during the period between interlocutory and final decision. Sunmark has not reached first base.

AFFIRMED.